**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS PARISI on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5,<br><br>        Defendants. | Case No. 1:24-cv-09271<br><br>Hon. Judge Sunil R. Harjani |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................................ ii

**FACTUAL BACKGROUND**................................................................................... 2

**ARGUMENT**............................................................................................................ 3

I.  Applicable Legal Standard for Transfer Pursuant to 28 U.S.C. § 1404(a) ...................... 3

II.  Venue Is Proper in the Northern District of Texas ............................................... 4

III.  The Northern District of Texas Is a More Convenient Forum.......................................... 4

    A.  As a Putative Class Representative, Plaintiff's Choice of Forum Is Entitled to Limited Deference. ................................................................. 5

    B.  The Northern District of Texas Encompasses the Situs of Material Events.......... 6

    C.  The Relative Ease and Access to Sources of Proof Weighs Neither in Favor of Nor Against Transfer................................................................. 8

    D.  The Northern District of Texas Is Significantly More Convenient for the Parties and Witnesses................................................................... 8

    E.  Other Potential Sources of Proof Are Equally Accessible in the Northern District of Texas................................................................. 10

IV.  The Interests of Justice Favor Transfer to the Northern District of Texas. ..................... 11

    A.  The Northern District of Texas Has a Greater Connection to This Dispute........ 11

    B.  Average Time to Trial Has Been Shorter in the Northern District of Texas. ...... 13

    C.  Both Courts Are Familiar with Applicable Law................................................. 14

**CONCLUSION** ................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M. Castle & Co. v. Byrne*,
    2013 WL 5511673 (N.D. Ill. Oct. 3, 2013)...................................................................6

*Adair v. Am. Airlines, Inc.*,
    2010 WL 11570129 (D.N.J. July 8, 2010)................................................................2

*Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.* ,
    2013 WL 951115 (N.D. Ill. Mar. 11, 2013)................................................................11

*Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*,
    2012 WL 4850188 (N.D. Ill. Oct. 11, 2012)................................................................4

*Amorose v. C.H. Robinson Worldwide, Inc.*,
    521 F. Supp. 2d 731 (N.D. Ill. 2007) ........................................................................5

*Andrade v. Chase Home Fin., LLC*,
    2005 WL 3436400 (N.D. Ill. Dec. 12, 2005).........................................................4, 12

*Barela v. Experian Info. Sols., Inc.*,
    2005 WL 770629 (N.D. Ill. Apr. 4, 2005) ...................................................9, 11, 12

*Blumenthal v. Mgmt. Assistance, Inc.*,
    480 F. Supp. 470 (N.D. Ill. 1979) .............................................................................5

*Coffey v. Van Dorn Iron Works*,
    796 F.2d 217 (7th Cir. 1986) .....................................................................................4

*Dale v. Deutsche Telekom AG*,
    2022 WL 6123365 (N.D. Ill. Oct. 7, 2022)..............................................................10

*DeKeyser v. Thyssenkrupp Waupaca, Inc.*,
    860 F.3d 918 (7th Cir. 2017) .....................................................................................5

*First Nat. Bank v. El Camino Res., Ltd.*,
    447 F. Supp. 2d 902 (N.D. Ill. 2006) ......................................................................13

*Gehrett v. Lexus*,
    2012 WL 3644008 (N.D. Ill. Aug. 23, 2012) ..........................................................13

*Georgouses v. NaTec Res., Inc.*,
    963 F. Supp. 728 (N.D. Ill. 1997) .........................................................................4, 12

*Grabham v. Am. Airlines, Inc.*,
  2019 WL 316213 (D. Ariz. Jan. 24, 2019) ................................................................2

*Handler v. Kenneth Allen & Assocs., P.C.*,
  2011 WL 1118499 (N.D. Ill., Mar. 24, 2011) ..........................................................10

*Hill-Jackson v. FAF, Inc.*,
  2010 WL 3403882 (N.D. Ill. Aug. 25, 2010) ...........................................................13

*Hoefert v. Am. Airlines Inc.*,
  2018 WL 2740276 (D. Ariz. June 7, 2018) ................................................................2

*In re Hudson*,
  710 F.3d 716 (7th Cir. 2013) ....................................................................................8

*Humphrey v. United Healthcare Servs., Inc.*,
  2014 WL 3511498 (N.D. Ill. July 16, 2014)............................................................11

*Jaramillo v. DineEquity, Inc.*,
  664 F. Supp. 2d 908 (N.D. Ill. 2009) ....................................................................5, 8

*Jasper v. Danone N. Am. Public Benefit Corp.*,
  2023 WL 4492354 (N.D. Ill. July 12, 2023)........................................................8, 10

*Johnson v. United Airlines, Inc.*,
  2013 WL 323404 (N.D. Ill. Jan. 25, 2013) .........................................................13, 14

*Karp v. Silver Arch Cap. Partners, LLC*,
  2021 WL 492872 (N.D. Ill. Feb. 10, 2021) .............................................................11

*Klutho v. 21st Century Ins. Co.*,
  2007 WL 4224296 (N.D. Ill. Nov. 26, 2007) .......................................................9, 12

*Law Bull. Publ'g, Co. v. LRP Publ'ns, Inc.*,
  992 F. Supp. 1014 (N.D. Ill. 1998) ...........................................................................5

*Moser v. Ayala*,
  2013 WL 1337187 (N.D. Ill. Mar. 29, 2013)...........................................................11

*In re Nat'l Presto Indus., Inc.*,
  347 F.3d 662 (7th Cir. 2003) ....................................................................................8

*RAH Color Techs., LLC v. Quad/ Graphics, Inc.*,
  2018 WL 439210 (N.D. Ill. Jan. 16, 2018)............................................................4, 5

*Rsch. Automation v. Schrader-Bridgeport, Int'l*,
  626 F.3d 973 (7th Cir. 2010) ..............................................................................11, 13

*Schell v. Aldi, Inc.*,
  2022 WL 900212 (N.D. Ill. Mar. 28, 2022) ..................................................................8

*Simonoff v. Kaplan, Inc.*,
  2010 WL 1195855 (N.D. Ill. Mar. 17, 2010) ..................................................5, 8, 9, 10

*Sorensen v. Am. Airlines, Inc.*,
  2022 WL 2065063 (S.D. Fla. June 8, 2022) ....................................................................2

*Spherion Corp. v. Cincinnati Fin. Corp.*,
  183 F. Supp. 2d 1052 (N.D. Ill. 2002) ............................................................................6

*Starks v. Am. Airlines, Inc.*,
  368 F. Supp. 3d 866 (D.S.C. Mar. 27, 2019) .............................................................2, 12

*Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*,
  2011 WL 1357516 (N.D. Ill. Apr. 11, 2011) ................................................................10

*Sutton v. Apple, Inc.*,
  2011 WL 2550500 (N.D. Ill. June 23, 2011) ................................................................14

*Torres v. Am. Airlines, Inc.*,
  2020 WL 3485580 (N.D. Tex. May 22, 2020) ...................................................... *passim*

**Statutes**

26 U.S.C. § 417(e)(3) ....................................................................................................................6

28 U.S.C. § 124(a)(2) ....................................................................................................................3

28 U.S.C. § 1391(b)(2) ..................................................................................................................4

28 U.S.C. § 1404(a) ..........................................................................................................1, 2, 3, 14

29 U.S.C. § 1132(e) ......................................................................................................................4

**Other Authorities**

*U.S. District Courts–Combined Civil and Criminal Federal Court Mmgt.*
  *Statistics* (September 30, 2024), *available at*
  https://www.uscourts.gov/statistics/table/na/federal-court-management-
  statistics/2024/09/30-1 ................................................................................................13

## INTRODUCTION

This lawsuit's connection with Illinois is tangential at best. Plaintiff's Complaint (Dkt. 1, Compl.) challenges the actuarial assumptions used to calculate certain benefits under four defined benefit pension plans (the "Plans") sponsored by Defendant American Airlines, Inc. ("American"). American is based in Fort Worth, Texas. While Plaintiff happened to have worked for American at Chicago's O'Hare Airport, that is where this case's connection to Illinois ends. He does not challenge anything unique to his own employment or benefit calculation, but rather claims certain terms of the Plans themselves are unlawful under the Employee Retirement Income Security Act ("ERISA"). And Plaintiff personally participated in just *one* of the four Plans in dispute. For the reasons below, Defendants respectfully ask the Court to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

This dispute arises from conduct in Texas. The Plans were sponsored and designed by American in Texas, and they are overseen by American employees in Texas. As such, the decisions Plaintiff challenges were made in Texas, not Illinois. Not only that, but Plaintiff's claims challenge the Plans' written terms—including the actuarial assumptions defined in the operative Plan documents—but not application of those terms to Plaintiff or any other participant based on their personal circumstances (in Illinois or elsewhere). Indeed, Plaintiff does not dispute that his benefits were calculated correctly under the only Plan in which he participated, giving him exactly what that Plan's written terms said he would receive. Therefore, the situs of the events material to this matter is unavoidably Texas, not Illinois.

While that alone supports a transfer of venue, as the named representative of a nationwide putative class, Plaintiff's choice of forum is afforded minimal, if any, weight. That is particularly so here, where the vast majority of putative class members live outside of Illinois. In fact, a district court in the Northern District of Texas has *already* addressed virtually identical claims against

American, filed by Plaintiff's same attorneys on behalf of many of the very same putative class members. *See Torres v. Am. Airlines, Inc.*, 2020 WL 3485580 (N.D. Tex. May 22, 2020) (denying class certification for similar ERISA challenge to the same Plans' actuarial assumptions). Litigating this case in the Northern District of Texas also will serve the interests of justice, as it will most likely proceed to trial more quickly. For many of these same reasons, courts often transfer cases involving American to the Northern District of Texas. *See, e.g.*, *Sorensen v. Am. Airlines, Inc.*, 2022 WL 2065063 (S.D. Fla. June 8, 2022); *Starks v. Am. Airlines, Inc.*, 368 F. Supp. 3d 866 (D.S.C. Mar. 27, 2019); *Grabham v. Am. Airlines, Inc.*, 2019 WL 316213 (D. Ariz. Jan. 24, 2019); *Hoefert v. Am. Airlines Inc.*, 2018 WL 2740276 (D. Ariz. June 7, 2018); *Adair v. Am. Airlines, Inc.*, 2010 WL 11570129 (D.N.J. July 8, 2010). The Court should reach the same conclusion here.

Taken together, and for the reasons discussed below, the Court should grant Defendants' motion and transfer this case to the Northern District of Texas under 28 U.S.C. § 1404(a).

## FACTUAL BACKGROUND

Plaintiff is a former American employee who worked at Chicago's O'Hare Airport until 2021. Compl. ¶ 19. However, this case has little to do with his employment or any decisions made with respect to him personally. Rather, the Complaint focuses on the terms and design of the Plans, including the actuarial assumptions the Plans specify for calculating pension benefits. *Id.* ¶¶ 1-13.

Plaintiff is a participant in the TWU Plan, one of four Plans his Complaint challenges. *Id.* ¶ 19. The TWU Plan is a defined benefit plan that provides retirement benefits to participants. *Id.* ¶ 2. All four Plans at issue are sponsored and overseen out of American's Fort Worth, Texas headquarters. Ex. A, Decl. of P. Kadam ("Kadam Decl.") ¶ 5. As such, the employees primarily responsible for the Plans are based in or around Fort Worth, Texas; none are based in Illinois. *Id.*

¶ 6.[1] The Plan also contains a choice-of-law provision stating that "the laws of the State of Texas" shall apply, except as preempted by federal law. Ex. B, Jan. 1, 2014, TWU Plan, § 17.17.

The Plan document assigns certain administrative responsibilities. Ex. C, TWU Plan, 1st Amend., §§ 11.1-11.3. For example, the Employee Benefits Committee ("EBC") is responsible for overseeing Plan administration and the investment of Plan assets. *Id.* § 11.2. Over the putative class period in this case (since October 1, 2018), there have been 13 members of the EBC, all but one of whom worked and lived in the Dallas-Fort Worth area. Kadam Decl. ¶ 7. The only EBC member who did not reside in Texas lived and worked in Arizona. *Id*. The Plan also assigns certain responsibilities to American Beacon, which served as a Plan fiduciary for monitoring and allocating Plan investments. Ex. C, TWU Plan, 1st Amend. § 11.4. American Beacon is headquartered in Irving, Texas.

In addition, any amendment of the TWU Plan is subject to the provisions of the TWU Collective Bargaining Agreement. *See, e.g.*, Ex. D, 2015 TWU Summary Plan Description, at (i). Thus, American "will not amend, suspend or terminate the Plan for the duration of the collective bargaining agreement between the Company and the [Transport Workers Union]" except to the extent required by law. Ex. B, TWU Plan, § 14.1(a).

**ARGUMENT**

**I.    Applicable Legal Standard for Transfer Pursuant to 28 U.S.C. § 1404(a)**

"For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A court may transfer a case where (1) venue is proper in both the transferor and transferee courts, (2) transfer is for the convenience of the parties and witnesses, and

---

[1] Fort Worth is located in Tarrant County, within the Northern District of Texas. *See* 28 U.S.C. § 124(a)(2).

(3) transfer is in the interest of justice. *Andrade v. Chase Home Fin., LLC*, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005). "The weight to be accorded each of these factors is left to the sole discretion of the court." *Georgouses v. NaTec Res., Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). "The movant bears the burden of establishing that transfer to the transferee court is more convenient." *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, 2012 WL 4850188, at *1 (N.D. Ill. Oct. 11, 2012). All of the circumstances and relevant criteria here support a transfer of this lawsuit.

## II.     Venue Is Proper in the Northern District of Texas

As a threshold matter, venue is proper in the Northern District of Texas. A civil action "may be brought in [] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Likewise, ERISA authorizes a civil action "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e). While Defendants deny most of Plaintiff's allegations—including any suggestion of wrongdoing—there is no valid dispute that all events underpinning the Complaint relate to decisions made at American's Texas headquarters. Indeed, Plaintiffs' entire case rests on the notion that the Plans, established and administered in Texas, violate ERISA. Therefore, the Northern District of Texas is a proper venue for this case. If there were any doubt, a court in the Northern District of Texas already considered nearly identical claims filed by other plaintiffs represented by the *same* counsel. *Torres*, 2020 WL 3485580, at *1-2.

## III.    The Northern District of Texas Is a More Convenient Forum.

The Northern District of Texas also represents the most convenient forum for the parties and witnesses involved in this dispute. In assessing this element, courts consider (1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, and (4) the convenience to the witnesses and parties. *RAH Color Techs., LLC v. Quad/*

*Graphics, Inc.*, 2018 WL 439210, at *3 (N.D. Ill. Jan. 16, 2018). The weight to afford these factors is "committed to the sound discretion of the trial judge." *Id.* at *2 (citation omitted); *see DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 860 F.3d 918, 923 (7th Cir. 2017). Here, the balance of these factors strongly favors a transfer of this dispute to the Northern District of Texas.

### A. As a Putative Class Representative, Plaintiff's Choice of Forum Is Entitled to Limited Deference.

While Plaintiff's chosen forum typically receives deference, "it is not absolute and will not defeat a well-founded motion to transfer." *Law Bull. Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). This is particularly true where, as here, Plaintiff asserts claims on behalf of a putative national class. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) ("However, this weight is greatly discounted in class actions.").

The reason is simple—if Plaintiff's proposed class is certified, Illinois will not be the home venue for all class members, and any venue selected is bound to be inconvenient for many class members. *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 472 (N.D. Ill. 1979) ("[P]laintiff's choice of a forum becomes substantially less important when he sues representatively on behalf of a class[.]"); *see also Simonoff v. Kaplan, Inc.*, 2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010) ("Because [plaintiff] purports to represent a nationwide class in pursuit of a claim that has no unique local interest, the Court finds that her choice in forum is due very little weight, if any."). On top of that, Plaintiff's choice of forum also receives less deference when "another forum has a stronger relationship to the dispute." *Id.*; *see also Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 731, 735 (N.D. Ill. 2007).

That is precisely the case here. Not only does the Northern District of Texas have a stronger relationship to this dispute, but most putative class members—by far—reside outside of Illinois.[2] As of October 31, 2024, there were more than 54,200 participants already receiving benefits from the Plans. Kadam Decl. ¶ 9. Of these, 51,305—or **95%**—resided outside of Illinois. *Id*. By contrast, only around 2,900 (or 5%) lived in Illinois. *Id.* Likewise, there are currently over 99,000 total participants in the four Plans at issue (*i.e.*, those already receiving benefits and active employees). *Id.* ¶ 8. Around 94% of these participants—almost 93,000 people—live outside of Illinois, including around 25,360 participants (or 26% of all the Plans) who live in Texas. *Id.* By contrast, only 6% of all participants in the Plans currently live in Illinois. *Id.* No matter how viewed, if a class is ever certified, the Northern District of Illinois will inconvenience the vast majority of class members. And Plaintiff himself did not even participate in three of the four Plans in dispute. His choice of venue should therefore be afforded little, if any, weight. And this is particularly true given that Plaintiff's own counsel previously filed virtually identical claims in the Northern District of Texas, purporting to represent many of the *same* class members nationally that Plaintiff now seeks to represent in this Court instead. *See Torres*, 2020 WL 3485580, at *1-6.

## B. The Northern District of Texas Encompasses the Situs of Material Events.

In considering a transfer, the Court should give substantial weight to the situs of material events. *A.M. Castle & Co. v. Byrne*, 2013 WL 5511673, at *3 (N.D. Ill. Oct. 3, 2013); *Spherion*

---

[2] The Complaint defines the putative class as:

> [A]ll participants or beneficiaries of the Plans who began receiving pension benefits on or after October 1, 2018, in the form of a QJSA (i.e., 50-100% JSA) with a spouse as the beneficiary whose monthly pension benefit would be greater if calculated using the Applicable Mortality Table as defined in Internal Revenue Code § 417(e)(3)(B) in the year of the participant's Benefit Commencement Date and the Applicable Interest Rate as defined in Internal Revenue Code § 417(e)(3)(C) from the third month preceding the participant's Benefit Commencement Date.

Compl. ¶ 87. By identifying the location of putative class members, Defendants do not concede Plaintiff's class definition is proper and reserve all arguments in opposition to class certification, if necessary.

*Corp. v. Cincinnati Fin. Corp*., 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002) (situs of the material events reduced deference to plaintiff's chosen forum). This factor strongly supports a transfer here.

As noted, Plaintiff challenges the design and terms of the Plans. Compl. ¶¶ 1; *id.* ¶ 8 (claiming American failed to pay joint and survivor annuity benefits that satisfy ERISA). Under the Plans, American employees earned pension benefits and may choose from several forms of joint and survivor annuities. *Id.* ¶ 4. The written Plan documents specify the actuarial assumptions used to convert a participant's single-life annuity into these optional forms. *Id.* ¶¶ 5-11.

The Plans' terms—the exclusive focus of Plaintiffs' claims under ERISA—were designed and administered at American's headquarters in Texas. Kadam Decl. ¶ 5. This case is not about the calculation of Plaintiff's individual benefits. Indeed, he does not dispute that his benefits were calculated *correctly* under the Plans, as written. Nor does he claim any breach of the Plans' terms, much less one occurring in Illinois. Rather, the actions he challenges focus squarely on the Plan itself and Plan-level decisions that occurred in Texas.

Plaintiff cannot dispute this, and instead alleges only that American has operations in Chicago and that "this suit arises out of American Airlines' contacts with its employees." Compl. ¶ 16. That is simply false. Nothing about Plaintiff's claims implicate American's "contacts with" him or any other employees. Rather, they clearly challenge the Plans' terms writ large, claiming Defendants violated ERISA by not disregarding those terms. Indeed, in *Torres*, which asserted nearly identical challenges to the same actuarial assumptions in the same four Plans, the plaintiffs' complaint alleged venue was proper in the *Northern District of Texas* because "some or all of the violations of ERISA occurred in this District." Ex. E, *Torres*, No. 4:18-cv-00983, Dkt. 1 ¶ 15.

In analogous circumstances, courts find that where the relevant decisions were made at a corporate level by employees at company headquarters, that represents the situs of the material

events and favors a transfer. *See, e.g.*, *Jaramillo*, 664 F. Supp. 2d at 914 (transfer of claims that defendants marketed and sold misleading products was appropriate where the "relevant decisions would have been made by employees of the Defendants at a headquarters office," despite that plaintiffs purchased the products elsewhere); *Jasper v. Danone N. Am. Pub. Benefit Corp.*, 2023 WL 4492354 (N.D. Ill. July 12, 2023) (transferring putative multi-state class action challenging marketing and labeling decisions to district in which defendants made the decisions, not Chicago, where plaintiff purchased items); *Simonoff*, 2010 WL 1195855, at *2 (granting transfer where "the focus of a court's inquiry will be with respect to the defendant's conduct, not the plaintiff's"). For similar reasons, the Complaint challenges Defendants' decisions about the Plans and their terms, not any conduct by Plaintiff. Therefore, because all decisions relating to the Plans were made in Texas, this factor supports a transfer to the Northern District of Texas.

### C. The Relative Ease and Access to Sources of Proof Weighs Neither in Favor of Nor Against Transfer.

Next, the Court considers "the ease of access to resources and witnesses." *Schell v. Aldi, Inc.*, 2022 WL 900212, at *2 (N.D. Ill. Mar. 28, 2022). Defendants recognize that this factor has "become less significant due to modern electronic discovery practices." *Id.* But for all the reasons discussed already—the situs of material events and the location of so many of the putative class members, as well as the relevant witnesses' presence in Texas—this factor certainly does not pose any impediment to transfer. At most, this factor can be fairly said to "not weigh in favor of either forum." *Id.*; *see also, e.g.*, *In re Hudson*, 710 F.3d 716, 719 (7th Cir. 2013).

### D. The Northern District of Texas Is Significantly More Convenient for the Parties and Witnesses.

To be sure, when a plaintiff and defendant reside in different states, no choice of forum will avoid imposing some inconvenience to the parties. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). However, the convenience of witnesses is "often the most important

factor in determining whether to grant a motion to transfer." *Klutho v. 21st Century Ins. Co.*, 2007 WL 4224296, at *3 (N.D. Ill. Nov. 26, 2007) (citation omitted). Here, nearly all potential witnesses (whether party or third-party witnesses) are located in the Northern District of Texas, which is also where it will be much easier for each party to bear the burdens and expense of any trial (should one ever be necessary). Thus, this factor likewise supports a transfer from Illinois to Texas.

In assessing the convenience of the witnesses, courts consider the "number of witnesses in each forum; the nature, quality, and importance of the witnesses' testimony with respect to the issues of the case; the expense of transportation and the length of time the witnesses will be absent from their jobs; and whether the witnesses can be compelled to testify." *See Barela v. Experian Info. Sols., Inc.*, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) ("precedent teaches that it is still sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted").

Applying these principles, the Northern District of Texas is a far more convenient forum for the parties and witnesses than this Court. As discussed, nearly all American employees who were involved in designing, implementing, and administering the Plans are located in Texas. *Supra* at 3. Defendants do not presently expect to rely on any Illinois witnesses. This also means the "majority of the depositions will involve" witnesses in Texas—in which case "[i]t makes little sense to litigate a case in Illinois when virtually every material witness resides in [Texas,] unless some other compelling reason motivates that decision." *Simonoff*, 2010 WL 1195855, at *2.

Beyond that, to the extent either party must call or rely on third-party witnesses, they are most likely to be former American employees who worked at or near American's headquarters in Texas, not in Illinois. Not only does this make the Northern District of Texas more convenient for

such witnesses, but to the extent they decline to appear voluntarily, they would then be within that court's subpoena power, which is not true of this Court. And, to the extent it becomes relevant, the third-party actuarial firm that assisted American with respect to the Plans, Willis Towers Watson, is located in Dallas, Texas. Kadam Decl. ¶ 10; *see, e.g.*, *Simonoff*, 2010 WL 1195855, at *2 (citing location of a non-party consultant to defendant as supporting transfer). On the flip side, the only potential inconvenience would be to Plaintiff. However, his "convenience is less compelling," given that he purports to bring a nationwide class action and "is likely replaceable in [his] proposed role as a class representative." *Jasper*, 2023 WL 4492354, at *4 (quoting *Dale v. Deutsche Telekom AG*, 2022 WL 6123365, at *5 (N.D. Ill. Oct. 7, 2022)); *see also Simonoff*, 2010 WL 1195855, at *2 ("Should litigating this case in the Southern District of New York prove too inconvenient for the named Plaintiff, then another named plaintiff can be substituted for her.").

In sum, the Northern District of Texas is a more convenient forum, both on an individual and aggregate basis. There is no known witness for whom this Court is more convenient.

E. **Other Potential Sources of Proof Are Equally Accessible in the Northern District of Texas.**

As discussed, substantially all records Plaintiff cites in his Complaint (which American does not concede are relevant or discoverable) are maintained electronically and are no more "located" in the Northern District of Illinois than in the Northern District of Texas. As such, the Northern District of Texas is an equally convenient forum for purposes of this factor, which is neutral at worst. *See Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *2 (N.D. Ill. Apr. 11, 2011) (where "electronic information can conveniently be accessed from, and stored in, any location," this factor is neutral); *Handler v. Kenneth Allen & Assocs., P.C.*, 2011 WL 1118499, at *3 (N.D. Ill., Mar. 24, 2011) (citation omitted) (where "documents are easily transferrable, access to proof is a neutral factor[]").

**IV.    The Interests of Justice Favor Transfer to the Northern District of Texas.**

Finally, the interests of justice support transfer to the Northern District of Texas. "The interest of justice prong relates to the efficient administration of the court system." *Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *4 (N.D. Ill. July 16, 2014) (internal quotations and citation omitted). When examining this factor, the court looks to the respective docket congestion, the courts' familiarity with the relevant law, and the relationship of the community to the controversy. *Rsch. Automation v. Schrader-Bridgeport, Int'l*, 626 F.3d 973, 978 (7th Cir. 2010); *Karp v. Silver Arch Cap. Partners, LLC*, 2021 WL 492872, at *2 (N.D. Ill. Feb. 10, 2021). Ultimately, the interest of justice analysis focuses on the efficient functioning of the courts and may be determinative in a given case, even if the convenience of parties and witnesses might call for a different result. *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, 2013 WL 951115, at *1 (N.D. Ill. Mar. 11, 2013).

Here, the Northern District of Texas unquestionably has a stronger relationship to this dispute, based on allegations in Plaintiff's Complaint alone. By contrast, this District has virtually no meaningful relationship to this case. Likewise, time-to-trial statistics and local considerations favor a transfer (or are neutral, at the least), given the quicker average time to trial in the Northern District of Texas and the fact that Texas federal courts routinely adjudicate ERISA claims.

**A.    The Northern District of Texas Has a Greater Connection to This Dispute.**

Courts often recognize that, "[r]esolving litigated controversies in their locale is a desirable goal of the federal courts." *Moser v. Ayala*, 2013 WL 1337187, at *12 (N.D. Ill. Mar. 29, 2013) (citation omitted). Moreover, "the administration of justice [is] served more efficiently when the action is brought before a court that is closer to the action." *Barela*, 2005 WL 770629, at *5 (internal quotations and citation omitted). Here, as explained, all relevant conduct alleged in Plaintiff's Complaint took place in Texas, and the vast majority of the potential witnesses are

located within the Northern District of Texas. *See Andrade*, 2005 WL 3436400 , at *6 (that many material events took place in the Eastern District of Pennsylvania favored transfer to that district). The Plan also includes a choice-of-law provision stating that Texas law applies, underscoring this connection. *Supra* at 3. For the various reasons above, therefore, the Northern District of Texas has the strongest relationship to this dispute. *See, e.g.*, *Starks*, 368 F. Supp. 3d at 871-72 (finding this factor favored transfer of case against American Airlines to the Northern District of Texas, because "Texas has a stronger interest in hosting this litigation").

On similar facts, courts in this District routinely grant motions to transfer. For example, in *Georgouses*, the court granted a transfer where only one-third of the class members lived in this District. 963 F. Supp. at 730-31 (where complaint alleged there were over 5,670 class members, only 1,900 of whom—or 33.5%—resided in plaintiff's chosen forum; the court found there was "nothing in the record that shows the remaining class members are not more conveniently located to the court in [the transferee district] than Chicago"); *see also Klutho*, 2007 WL 4224296, at *4 (granting transfer where twice as many putative class members resided in the transferee district). That only around 5% of putative class members (at most) live in this District strongly favors transfer, particularly where more than 25,000 of the current participants in the Plans (or 26%) live in Texas. Kadam Decl. ¶ 8; *supra* at 6.

Finally, there can be no legitimate dispute that the Northern District of Texas is "closer to the action" in this case, *Barela*, 2005 WL 770629, at *5 (citation omitted), given that another court within that same District has *already addressed* nearly identical claims against American, filed by the Plaintiff's same attorneys on behalf of many of the same putative class members that Plaintiff now strives to represent in this Court instead. *Torres*, 2020 WL 3485580. This factor strongly favors transfer.

**B.      Average Time to Trial Has Been Shorter in the Northern District of Texas.**

A court analyzing whether to transfer a case separately evaluates the "interest of justice" as it relates to the efficient administration of the court system. *Rsch. Automation*, 626 F.3d at 978. When considering the speed-to-trial factor, courts look to Federal Court Management Statistics to evaluate which forum would provide a quicker resolution for the parties. *See First Nat. Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913-914 (N.D. Ill. 2006). The two statistics most relevant to this analysis are (1) the median months from filing to disposition, and (2) the median months from filing to trial. *Gehrett v. Lexus*, 2012 WL 3644008, at *3 (N.D. Ill. Aug. 23, 2012).

Here, both metrics strongly favor the Northern District of Texas. According to the most recent Federal Court Management Statistic Report, the Northern District of Texas is less congested than the Northern District of Illinois. Specifically, the median time from filing a lawsuit until trial in the Northern District of Texas is 18.1 months, compared to 58.6 months in the Northern District of Illinois. *See U.S. District Courts–Combined Civil and Criminal Federal Court Mmgt. Statistics* (September 30, 2024), at 34, 47.[3] The median time from filing to disposition in the Northern District of Texas is 5.6 months, compared to 6.8 months in the Northern District of Illinois. Therefore, if this case were to be disposed of before trial, the Northern District of Texas might be slightly speedier. But if the case were to go to trial, the Northern District of Texas would be considerably faster than the Northern District of Illinois. As such, this factor also favors transfer to the Northern District of Texas. *See, e.g.*, *Hill-Jackson v. FAF, Inc.*, 2010 WL 3403882, at *4 (N.D. Ill. Aug. 25, 2010) (the "speed at which the case will proceed to trial" factors into transfer analysis); *Johnson v. United Airlines, Inc.*, 2013 WL 323404, at *7 (N.D. Ill. Jan. 25, 2013) (finding that comparative median months from filing to disposition and filing to trial favored a

---

[3] *See* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2024/09/30-1, and also attached hereto as Exhibit F.

transfer). There also are roughly *half* as many pending cases per judge in the Northern District of Texas (498 cases per judge) than in the Northern District of Illinois (996 cases per judge). Ex. F. *See Johnson*, 2013 WL 323404, at *7. This factor therefore also warrants a transfer.

### C. Both Courts Are Familiar with Applicable Law.

Both courts would be expected to have comparable familiarity with the governing law, which in this case turns solely on the application of ERISA, a federal statute. *See, e.g.*, *Sutton v. Apple, Inc.*, 2011 WL 2550500, at *4 (N.D. Ill. June 23, 2011). This factor is therefore neutral.

### CONCLUSION

In sum, all of the material events in the Complaint are alleged to have occurred in the Northern District of Texas; most potential witnesses are located in the Northern District of Texas; and transfer would strongly advance the interests of justice because the Northern District of Texas has a far stronger connection to this case. By contrast, the only connection to the Northern District of Illinois—that Plaintiff lives here—is an insignificant one that cannot overcome the numerous factors favoring a transfer. For the reasons set forth herein, Defendants respectfully requests that the Court transfer this case to the Northern District of Texas pursuant to 28 U.S.C. § 1404.

Dated: December 3, 2024

Respectfully submitted,

*/s/ Matthew A. Russell*

Jeremy P. Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
215-963-5258
215-963-5001 (fax)
jeremy.blumenfeld@morganlewis.com

Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
312-324-1000
312-324-1001 (fax)
matthew.russell@morganlewis.com

*Counsel for Defendants American Airlines, Inc. and the Employee Benefits Committee*

14

## **CERTIFICATE OF FULFILLMENT OF MEETING REQUIREMENTS**

Pursuant to this Court's requirement that counsel engage in a good-faith attempt to resolve or narrow disputed issues before a motion is filed, the parties conferred about Defendants' Motion to Transfer Venue, but were unable to resolve or narrow the disputed issues.

/s/ Matthew A. Russell
Matthew A. Russell

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 3, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>*s/ Matthew A. Russell*</u>
Matthew A. Russell