**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS PARISI on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5,<br><br>          Defendants. | Case No. 1:24-cv-09271<br><br>Hon. Judge Sunil R. Harjani |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION**.................................................................................... 1

II.     **BACKGROUND** ................................................................................... 3

III.    **LEGAL STANDARD** ............................................................................ 5

IV.     **ARGUMENT** ....................................................................................... 5

      A.      Statutory Background and Context ................................................... 5

      B.      29 U.S.C. § 1055 Does Not Displace a Plan's Express Actuarial Assumptions with a Vague and Judicially Determined "Reasonableness" Provision. ...................................................... 7

      C.      Plaintiff's Reliance on Treasury Regulations and Actuarial Standards of Practice Cannot Override ERISA's Express Terms ............................... 10

      D.      Plaintiff Does Not Allege Any Facts About His "Accrued Benefits." ............... 12

      E.      Plaintiff Fails to State a Claim of Fiduciary Breach ........................... 13

V.      **CONCLUSION** ................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)...........................................................................................................5

*Alessi v. Raybestos-Manhattan, Inc.*,
    451 U.S. 504 (1981).....................................................................................................6, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................5

*Belknap v. Partners Healthcare Sys., Inc.*,
    588 F. Supp. 3d 161 (D. Mass. 2022) ...................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................5

*Camera v. Dell Inc.*,
    2014 WL 960897 (W.D. Tex. Feb. 26, 2014)...................................................................15

*Cement & Concrete Workers Dist. Council Pen. Fund v. Ulico Cas. Co.*,
    387 F. Supp. 2d 175 (E.D.N.Y. 2005) .............................................................................15

*Conkright v. Frommert*,
    559 U.S. 506 (2010)...........................................................................................................6

*Duncan v. Walker*,
    533 U.S. 167 (2001)...........................................................................................................8

*Harmon v. FMC Corp.*,
    2018 WL 1366621 (E.D. Pa. Mar. 16, 2018)..................................................................15

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999).....................................................................................................3, 14

*JSW Steel (USA) Inc. v. Nucor Corp.*,
    586 F. Supp. 3d 585 (S.D. Tex. 2022) ...............................................................................5

*Keene Corp. v. United States*,
    508 U.S. 200 (1993)...........................................................................................................8

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)...........................................................................................................8

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ..................................................................................................6

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...................................................................................3

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024)............................................................................................10

*Mass. Mutual Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..................................................................................................6

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)..................................................................................................8

*Nicolas v. Trs. of Princeton Univ.*,
  2017 WL 4455897 (D.N.J. Sept. 25, 2017) ...........................................................15

*Paul v. RBC Capital Mkts. LLC*,
  2018 WL 3630290 (W.D. Wash. July 31, 2018) ....................................................15

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)................................................................................................14

*Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pen. Comm.*,
  No. 2:23-cv-12343, Dkt. 36 (E.D. Mich. April 17, 2024) ............................... *passim*

*Russello v. United States*,
  464 U.S. 16 (1983)....................................................................................................8

*Sec'y of Labor v. Macy's, Inc.*,
  2022 WL 407238 (S.D. Ohio Feb. 10, 2022)..........................................................14

*Singh v. RadioShack Corp.*,
  882 F.3d 137 (5th Cir. 2018) ..................................................................................15

*Watt v. FedEx Corp.*,
  No. 2:23-cv-02593, Dkt. No. 66 (W.D. Tenn. Sept. 18, 2024).........................*passim*

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001)................................................................................................10

**Statutes**

26 U.S.C. § 401(a)(25)....................................................................................................5, 6

26 U.S.C. § 417(e) ..............................................................................................................9

29 U.S.C. § 1002(23) ....................................................................................................3, 13

29 U.S.C. § 1054(c)(3) ........................................................................................................9

29 U.S.C. § 1055 ........................................................................................................... *passim*

29 U.S.C. § 1083(h)(1) ......................................................................................................7

29 U.S.C. §§ 1102(a)-(b) ............................................................................................6, 12

29 U.S.C. § 1104(a)(1)(D) ..........................................................................................14, 15

**Other Authorities**

H.R. Rep. No. 103-632, Part 2, 103rd Cong, 2nd Session, at 57 (Aug. 26, 1994) ...........9

26 C.F.R. § 1.401(a)-11(b)(2) ..........................................................................................11

26 C.F.R. § 1.411(a)(13)-1(b)(3) .....................................................................................11

26 C.F.R. § 1.411(d)-3(g) .................................................................................................11

26 C.F.R. § 1.417(a)(3)-1(c)(2) ..................................................................................10, 11

## I.    INTRODUCTION

This is a lawsuit under the Employee Retirement Income Security Act ("ERISA") challenging the actuarial assumptions used to calculate Plaintiff's pension benefits. Plaintiff's Complaint (Dkt. 1, "Compl.") asks this Court to rewrite the terms of four different defined benefit pension plans sponsored by American Airlines, Inc., by replacing the actuarial assumptions expressly stated in the written Plan documents—which were subject to collective bargaining— with other, undefined "reasonable" assumptions.[1] In doing so, Plaintiff also asks this Court to rewrite ERISA itself by injecting requirements into the statute that Congress declined to include— despite specifically adding them elsewhere. There is simply no basis in ERISA for Plaintiff's claims, which fail as a matter of law and should be dismissed under Rule 12(b)(6).

The Plan allows participants to choose how they will receive their benefits. They may select a single-life-annuity ("SLA"), which provides a lifetime stream of monthly payments upon retirement. Or they may select from among several joint-and-survivor annuity ("JSA") options, which provide a stream of monthly payments for their lives and, if the participant dies before his or her spouse, a designated percentage of this payment stream for the spouse's life (50%, 66 2/3%, 75%, or 100%). The Plan's 50% JSA is the "qualified joint and survivor annuity," or QJSA, because it is the default form. Compl. ¶ 46. The written Plan terms expressly instruct how to calculate the QJSA and other JSA options, including the actuarial assumptions to be used (*i.e.*, the mortality table and interest rate). Plaintiff does not dispute that his and other participants' benefits were calculated correctly under the Plan terms, thus providing them exactly what it promised.

---

[1] Plaintiff purports to challenge four American Airlines pension plans: (1) the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO; (2) the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers; (3) the Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants; and (4) the American Airlines, Inc. Pilot Retirement Benefit Program. *See* Compl. ¶ 1 & n.1. Plaintiff only participated in the Transport Workers Union Plan, referred to as "the Plan" or "TWU Plan."

Instead, Plaintiff claims that ERISA required the Plan to use different actuarial assumptions that would grant him and some other participants higher benefits. Specifically, the Complaint rests entirely on Plaintiff's assertion that, never mind what the Plan says, 29 U.S.C. § 1055 mandated that Defendants use other, "reasonable" actuarial assumptions to calculate the JSA options offered under the Plan. Plaintiff's claims fail as a matter of law for several reasons.

*First*, and most fundamentally, ERISA does not require using "reasonable" assumptions to calculate qualified JSAs. While Congress explicitly *does* require using "reasonable" actuarial assumptions for certain purposes in *other* statutory provisions, there is no such requirement in § 1055. For this reason, several courts have dismissed nearly identical claims because § 1055 "does not require a specific set of assumptions, reasonable or not[.]" Ex. 1, *Watt v. FedEx Corp.*, No. 2:23-cv-02593, Dkt. No. 66 ("*Watt* Order"), at 6 (W.D. Tenn. Sept. 18, 2024), *appeal filed*, No. 24-5945 (6th Cir. Oct. 11, 2024); Ex. 2, *Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pen. Comm.*, No. 2:23-cv-12343, Dkt. 36 ("*Reichert* Order") (E.D. Mich. April 17, 2024), *appeal filed*, No. 24-1442 (6th Cir. May 17, 2024); *Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161 (D. Mass. 2022), *appeal dismissed sub nom. Belknap v. Mass Gen. Brigham, Inc.*, 2022 WL 4333752 (1st Cir. Aug. 30, 2022). This Court should reach the same conclusion based on the plain language of § 1055 and standard principles of statutory construction.

Unable to avoid the statutory text, Plaintiff cites authority beyond ERISA and § 1055—such as Treasury regulations—to suggest a "reasonableness" requirement must be engrafted onto the statute. However, these other authorities address different ERISA provisions where Congress explicitly used the word "reasonable" in the statute. *Infra* at 7-12. Unlike those provisions, § 1055 contains no such language. If anything, therefore, Plaintiff's cited authorities further *support* dismissal, by proving that "[i]f Congress had intended [§ 1055] to require actuarial equivalence to be calculated using 'reasonable' assumptions, it knew how to do so." *Belknap*, 588 F. Supp. 3d at

171. Because Congress did not do so in § 1055, Plaintiff's claims fail as a matter of law.

*Second*, Plaintiff's claim under § 1055 also fails because that statute does not mandate the calculation he claims was required. Section 1055(d) defines the term "qualified joint and survivor annuity," while § 1055(a) then states that a participant's "accrued benefit"—defined as the annual benefit commencing "at normal retirement age," 29 U.S.C. § 1002(23)—must be paid as a "qualified joint and survivor annuity." *Id*. § 1055(a). This "normal retirement age" benefit, therefore, is the necessary starting point for calculating the value of Plaintiff's JSA (and the proper point of comparison to the JSA he is receiving now). Plaintiff, however, retired *before* normal retirement age. Compl. ¶ 84. Nowhere does he allege the amount of his "accrued benefit" *at* normal retirement age, nor does it compare *that* amount to his QJSA or allege he received anything less than the actuarial equivalent of his "accrued benefit." Count I therefore fails for this reason as well.

*Third*, Count II fails to state a claim that Defendants breached their fiduciary duties merely because the Plan terms allegedly violated ERISA. To start, Plaintiff does not (and cannot) plausibly allege that the Plan violated 29 U.S.C. § 1055 in the first place, so there can be no fiduciary breach. *See Watt* Order at 9; *Reichert* Order at 5. Regardless, Count II also fails because designing a benefit plan is a quintessential "settlor"—not fiduciary—act, and Defendants did not act as fiduciaries for the conduct Plaintiff challenges. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

For these reasons, explained further below, the Complaint should be dismissed.

## II.    BACKGROUND[2]

Plaintiff is a participant in the TWU Plan, one of the four Plans at issue. Compl. ¶ 19. The Plan is a defined benefit plan that provides retirement benefits to participants and beneficiaries. *Id.* ¶ 2. The Plan is offered pursuant to a TWU Collective Bargaining Agreement ("TWU CBA"), and

---

[2] This section is based on the Complaint and Plan documents it references, which the Court may properly consider. *See, e.g.*, *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

any amendment of the Plan is subject to the TWU CBA. *See* Ex. 3, Jan. 1, 2014 TWU Plan ("TWU Plan"), at 1 & § 14.1(a); Ex. 4, July 2015 Summary Plan Description, at (i). As such, the Plan states that American Airlines "will not amend, suspend or terminate the Plan for the duration of the collective bargaining agreement between the Company and the [Transport Workers Union]," except to the extent required by law. Ex. 3, TWU Plan, § 14.1(a). The TWU CBA, in turn, includes several provisions relating to the calculation of benefits in the Plan. Ex. 5, TWU CBA at Art. 40.[3]

Under the Plan, American Airlines employees earn an "accrued benefit" in the form of a SLA at normal retirement age. Compl. ¶ 3. The normal retirement age under the Plan is 65. Ex. 3, TWU Plan, §§ 2.66, 6.1. However, the Plan allows participants to commence their benefits before or after normal retirement age (with various subsidies and adjustments), and also offers several alternative benefit forms. These forms include JSAs, which provide an annuity for the participant's life, with a contingent annuity payable to the beneficiary for his or her life. Ex. 3, TWU Plan, §§ 6.2, 6.3. The Plan offered the option of electing 50%, 66 2/3%, 75%, or 100% JSAs. Compl. ¶ 4. As ERISA requires, the Plan offers a QJSA (the 50% JSA), which is the default form for married participants, as well as a qualified optional survivor annuity ("QOSA") (the 75% JSA). *See id.* ¶ 46; *see also* 29 U.S.C. §§ 1055(c)(1)(A), (d)(1)-(2).

As noted, the Plan allows participants to commence their benefits early, including at age 62, with a *fully* subsidized benefit. Ex. 3, TWU Plan, §§ 7.2, 7.3. This means a participant receives the full value of their "accrued benefit" (payable at age 65), but early and without reduction.[4] Here,

---

[3] The other three Plans are also subject to collective bargaining agreements between American Airlines and unions representing employees and that contain similar provisions.

[4] For example, if a 62-year-old had an "accrued benefit" of $1,000/month (with payments commencing at age 65), a fully subsidized early benefit would allow him to start receiving the same $1,000/month—but three years sooner. That $1,000 today is worth more than $1,000 three years from now, and this participant also would receive three additional years of monthly payments (assuming he lives to the same age whether he starts his benefit at age 62 or 65). So the *value* of the early benefit is greater than the value of the "accrued benefit" commencing at age 65. That is the "subsidy" in a subsidized early retirement benefit.

Plaintiff commenced his benefits at age 62. Compl. ¶ 84. To calculate a JSA, the Plan uses actuarial assumptions to convert the SLA monthly amount as of a given date into a JSA amount as of that date. *Id.* ¶¶ 5-11. As required by law, the written Plan document specifies the actuarial assumptions for these calculations, including mortality tables and interest rates. *Id.*; *see* 26 U.S.C. § 401(a)(25).

## III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To be "plausible," a plaintiff's allegations must raise "more than the mere possibility of misconduct." *Id.* at 679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("speculative" allegations are insufficient). "When faced with two possible explanations for a defendant's conduct, only one of which results in liability, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *JSW Steel (USA) Inc. v. Nucor Corp.*, 586 F. Supp. 3d 585, 595 (S.D. Tex. 2022), *appeal filed sub nom. JSW Steel (USA) v. Nucor*, No. 22-20149 (5th Cir. Mar. 21, 2022) (quoting *Twombly*, 550 U.S. at 557). Where, as here, Plaintiff is not entitled to relief even if his alleged facts are accepted as true, his claims fail as a matter of law and should be dismissed.

## IV.    ARGUMENT

### A.    Statutory Background and Context

Putting Plaintiff's claims in context is important before turning to the specific statutory provision upon which his claims rely (29 U.S.C. § 1055). ERISA is "a comprehensive statute" that reflects Congress' "careful balancing" of competing aims. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 215 (2004) (citation omitted). Congress envisioned a law that would ensure employees get the benefits they were promised, but without a regime "so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place."

*Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted). Importantly, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). These decisions are left to employers, and ERISA serves only to protect that contractual commitment once made. *See, e.g.*, *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985).

A pension plan's actuarial assumptions are like any other contractual term in a retirement plan that determines the benefits the employer has chosen to offer its employees. ERISA does not dictate *what* benefits to provide or the terms on which they will be paid, except insofar as Congress directly legislates such terms. Instead, "ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control *the level of benefits* is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 511 (1981) (emphasis added). And the law further requires stating the actuarial assumptions directly in the written plan document. 29 U.S.C. §§ 1102(a)(2)(B) & (b)(4); *see also* 26 U.S.C. § 401(a)(25). In short, ERISA does not require that a plan offer any particular benefit formula, nor does it require that an employee's pension amount be "reasonable," relative to his or her salary, years of service, or any other variable.

Here, moreover, all four Plans at issue were subject to collective bargaining. American Airlines does not set the Plan terms unilaterally as they apply to Plaintiff and other employees. To the contrary, in this context Plaintiff and the entire putative class had a seat at the "plan sponsor" table, participating in decisions over the Plans' terms through their designated representatives. Indeed, the TWU Plan makes clear that American Airlines "will not amend, suspend or terminate the Plan for the duration of the collective bargaining agreement between the Company and the [Transport Workers Union]," except to the extent required by law. Ex. 3, TWU Plan, at § 14.1(a).

6

Given these principles and backdrop, and as explained further below, Plaintiff does not state any viable claim for a violation of ERISA's statutory text as a matter of law.

**B.     29 U.S.C. § 1055 Does Not Displace a Plan's Express Actuarial Assumptions with a Vague and Judicially Determined "Reasonableness" Provision.**

The crux of the Complaint is that ERISA requires using "reasonable" actuarial assumptions to calculate JSA benefits. But § 1055 "does not require a specific set of assumptions, reasonable or not, for actuarial equivalence for QJSAs." *Watt* Order at 6. To the contrary, § 1055, "[o]n its face, . . . contains no reasonableness requirement" and "says nothing about how actuarial equivalence is to be calculated[.]" *Belknap*, 588 F. Supp. 3d at 170. "[I]t does not specify what inputs to use, nor does it explicitly require them to be 'reasonable'—either individually or in the aggregate." *Id*. Put simply, ERISA does not "provide that the calculation of actuarial equivalence requires the use of 'reasonable' assumptions." *Id*. at 175.

That omission is "significant"—as other courts have recognized in rejecting similar claims invoking § 1055, *Belknap*, 588 F. Supp. 3d at 172—because "[o]ther sections of ERISA *do require* the use of certain assumptions and/or reasonableness criteria." *Watt* Order at 6 (emphasis added); *Reichert* Order at 4 ("Congress included 'reasonableness' requirements in other ERISA provisions and identified specific actuarial factors that should be used when calculating other payments."); *Belknap*, 588 F. Supp. 3d at 171 (similar). Those other provisions apply, however, only for other, specific purposes and other sections of ERISA—and ones that do not dictate the amount of benefits paid out of a plan, but rather for calculating funding, 29 U.S.C. § 1083(h)(1) (requiring *each* assumption to be "reasonable" for any "computation under this section"), or withdrawal liability, *id*. § 1393(a)(1) (requiring "reasonable" assumptions "in the aggregate" to calculate "[w]ithdrawal liability under this part"). In fact, in another part of the *same* section—§ 1055(g)—Congress even mandated using *specific* assumptions for calculating lump sums, as discussed below (at 9).

7

Congress's word choice is particularly important here, because "ERISA is a comprehensive and reticulated statute, which Congress adopted after careful study of private retirement pension plans." *Alessi*, 451 U.S. at 510 (quotations and citations omitted); *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261-62 (1993). "If Congress intended to include a reasonableness requirement in § 1055," as it did elsewhere, "it would have done so." *Reichert* Order at 4. Or it could have required that actuarial assumptions be "reasonable" *for all* of ERISA, instead of just for specific purposes or particular sections of the statute. But Congress did none of that—a deliberate choice that must be respected. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (courts have "duty to refrain from reading a phrase into the statute when Congress has left it out"); *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (same); *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (same).

Ultimately, Plaintiff asks this Court to disregard the clear terms of the very statute upon which his claims rely, § 1055, and effectively rewrite both the statute and the Plan's terms. The Court should decline this invitation, including for reasons the Supreme Court has long made clear:

> [V]ague notions of a statute's basic purpose are [] inadequate to overcome the words of its text regarding the specific issue under consideration. This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs.

*Mertens*, 508 U.S. at 261-62 (citations and quotations omitted). Indeed, the Supreme Court warned that "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* (citations and quotations omitted). Courts should thus be "reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by

its text." *Belknap*, 588 F. Supp. 3d at 171 (cleaned up; citation omitted). Rather, the Court should simply "apply the law that Congress passed," not "make new policy." *Reichert* Order at 5.

Imposing a "reasonableness" requirement into § 1055 not only lacks support in ERISA, but it would be inconsistent with that statute and Plaintiff's cited authorities. To start, he alleges that the Plans must use the "reasonable" actuarial assumptions pursuant to 26 U.S.C. § 417(e) and 29 U.S.C. § 1055(g), which are "based on current market interest rates and mortality assumptions." Compl. ¶ 28. But, as Plaintiff concedes, these apply only to calculating *lump sums*. *Id.* Congress requires lump sums to be calculated using the "applicable interest rate" and "applicable mortality table," which are specifically defined by the statute. 29 U.S.C. § 1055(g). Congress added those lump-sum provisions specifically to prohibit plans from using "unreasonable" assumptions when calculating lump sums. *See* H.R. Rep. No. 103-632, Part 2, 103rd Cong, 2nd Session, at 57 (Aug. 26, 1994) (describing rationale for amendments to 26 U.S.C. § 417(e) and 29 U.S.C. § 1055(g)). And, critically, Congress has amended 26 U.S.C. § 417(e) and 29 U.S.C. § 1055(g) several times.

This confirms Congress *did not* believe ERISA's use of the phrase "actuarially equivalent" already baked in a general "reasonableness" requirement, as Plaintiff argues.[5] In fact, Congress could have required calculating the QJSA or QOSA under § 1055(d) using the same assumptions as for lump sums under § 1055(g). And Congress could have amended § 1055(d) when it amended § 1055(g). Or Congress could have included a provision in § 1055 requiring that *all* benefit options be calculated using the "applicable interest rate" or "applicable mortality table," or using "reasonable" assumptions. Congress did none of those things. Plaintiff, however, argues that Congress intended in § 1055(d) that benefits must be "reasonable," and did so without being

---

[5] Notably, 29 U.S.C. § 1054(c)(3)—which applies to other optional benefit forms *and lump sums*—also requires that certain benefits must be the "actuarial equivalent." There would be no need for Congress to change the law to prevent plans from using "unreasonable" assumptions to calculate lump sums if "actuarial equivalent" in § 1054(c)(3) *already required* using "reasonable" assumptions, as is Plaintiff's theory here.

explicit. But Congress "does not alter the fundamental details . . . in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). There is no basis for inferring such a requirement where Congress not only declined to put it in the statute, but added similar terms *elsewhere* in ERISA.

For the reasons above, Plaintiff's claims fail for the simple reason that § 1055 does not include the "reasonable" requirement upon which his claims depend.

### C.    Plaintiff's Reliance on Treasury Regulations and Actuarial Standards of Practice Cannot Override ERISA's Express Terms.

Instead of relying on ERISA's statutory text, Plaintiff argues that outside authority, such as Treasury regulations under the Internal Revenue Code, "incorporate the reasonable assumptions requirement into the actuarial equivalence requirement under § 1055." *Watt* Order at 7. This is wrong, as several courts have held in rejecting the same theory. "There are no Treasury Department regulations that define 'actuarial equivalence,' at least in the context of annuity benefits." *Belknap*, 588 F. Supp. 3d at 175 (rejecting same regulations that Plaintiff here contends require "reasonable" actuarial assumptions to calculate JSA benefits). And because no Treasury regulations are "enforceable or applicable to § 1055(d)," "there is no extra-statutory reasonableness requirement for Defendants to follow when determining the QJSAs." *Watt* Order at 7.

These holdings apply equally here, as Plaintiff points only to inapplicable regulations that do not control.[6] For example, he cites 26 C.F.R. § 1.417(a)(3)-1(c)(2), which is a disclosure regulation that does not impose any substantive requirements on calculating benefits. Compl. ¶ 30.

---

[6] Even if the regulations Plaintiff cites applied to annuity benefits like JSAs (they do not), they are entitled to no deference under the Supreme Court's ruling in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). In *Loper*, the Supreme Court held that "courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2247. Rather, it is a court's role "to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 2263. Under *Loper*, this Court should perform a *de novo* review of ERISA's language—including § 1055—without deferring to the inapplicable regulations cited in the Complaint.

Rather, it requires plans to disclose to participants when different benefit forms (*e.g.*, lump sums, SLAs, and JSAs) have different values when using a common set of actuarial assumptions—which are expressly allowed to be *different* than the assumptions a plan uses to actually calculate and pay benefits. 26 C.F.R. § 1.417(a)(3)-1. Indeed, the point of the regulation is that different benefit options can have *different* values. There would be no need for a disclosure telling participants that a JSA is worth less than the SLA if § 1055(d) *already* required that the JSA must be the same value as the SLA using "reasonable" assumptions. In fact, these regulations allow a plan to disclose that a QJSA worth 95% of the SLA is "approximately equal" to the SLA, and even include an example where the 100% JSA is worth only 93% of the QJSA. 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C) & Example 4 (age 65 commencement). Of course, it makes no sense to require plans to disclose how much more or less valuable one benefit option is than another—or to describe such options as "approximately equal" if they are within 5% of each other—if § 1055 already requires that all JSAs must be equal to one another (and equal to the SLA) when using "reasonable" assumptions.

Plaintiff's other cited regulations are just as inapplicable and irrelevant. *See* Compl. ¶ 30. Several were promulgated under Section 401 of the Internal Revenue Code and govern tax qualification; they are not enforceable under ERISA. *See* 26 C.F.R. §§ 1.401(a)-11(b)(2), 1.417(a)(3)-1(c)(2)(iv). Another is irrelevant because it defines "actuarial present value," which appears nowhere in § 1055. 26 C.F.R. § 1.411(d)-3(g). And other regulations relate only to lump-sum benefits. 26 C.F.R. §§ 1.411(a)(13)-1(b)(3). But, as explained, lump sums are subject to special rules because Congress required specific assumptions for calculating them. As *Belknap* held, "[t]hat distinction is significant" because "lump-sum benefits receive special treatment when calculating actuarial equivalence under ERISA." 588 F. Supp. 3d at 172-73. None of Plaintiff's regulations "is enforceable or applicable to § 1055(d) and, consequently, its actuarial equivalence requirement." *Watt* Order at 7; *Belknap*, 588 F. Supp. 3d at 171-73 (same).

Plaintiff also cites the Actuarial Standards of Practice ("ASOPs") issued by the Actuarial Standards Board, which allegedly "require actuaries to use 'reasonable assumptions.'" Compl. ¶33. But the ASOPs, like Plaintiff's cited regulations, are not a part of ERISA's statutory text and do not control § 1055 or its actuarial equivalence requirement. To the contrary, Plaintiff again tries to blur the lines between the distinct purposes for which calculations are performed for a defined benefit pension plan. The ASOPs do not require using "reasonable" assumptions to *calculate individual benefits*, the purpose relevant here. Rather, they offer guidance to actuaries—which Defendants are not—in measuring a pension plan's obligations, such as for funding, withdrawal liability, or corporate financial statements. In fact, the ASOPs expressly *exclude* individual benefit calculations from their scope, because those calculations are dictated by the written plan document. *See* ASOP No. 27, § 1.2 ("Measurement of pension obligations do not generally include individual benefit calculations[.]"); ASOP No. 35, § 1.2 (same). Therefore, like ERISA—where Congress required using "reasonable" assumptions for specific purposes, *supra* at 7-12—the ASOPs require actuaries to use "reasonable" assumptions only for certain purposes not at issue in this case.[7]

In the end, Plaintiff admits that his benefits were calculated correctly in accordance with the Plan's written terms, meaning he received exactly what the Plan said he would. Nothing more is required under ERISA. *See* 29 U.S.C. § 1102(b). The Court should decline Plaintiff's invitation to "rewrite the Plan" or "create new statutory requirements." *Belknap*, 588 F. Supp. 3d at 176-77.

### D. Plaintiff Does Not Allege Any Facts About His "Accrued Benefits."

Plaintiff's claim under § 1055 also fails for another independent reason. That section defines the term "qualified joint and survivor annuity," which means this definition applies where

---

[7] Beyond these fundamental problems, the ASOP sections Plaintiff cites were created in 2011 (ASOP No. 27) and 2013 (ASOP No. 35)—decades after ERISA was enacted—and therefore have no bearing on Congress's intent when it drafted ERISA in 1974. And, regardless, these "ASOPs only use the suggestive 'should' rather than the mandatory 'shall' present in other parts of ERISA and § 1055." *Watt* Order at 7.

the same term is used elsewhere in the statute. *See* 29 U.S.C. § 1055(d)(1). Section 1055(a)(1), in turn, requires that a participant's "accrued benefit" be provided as a QJSA in certain circumstances. *Id*. § 1055(a)(1); *see id.* § 1055(c). "Accrued benefit," meanwhile, is a specifically defined term in ERISA that refers to one's benefit "expressed in the form of an annual benefit *commencing at normal retirement age*." *Id*. § 1002(23) (emphasis added). Therefore, § 1055 applies only to a participant's "accrued benefit"—meaning the starting point for applying § 1055 is the value of the participant's benefit that would commence at normal retirement age, as defined by the plan.

Here, the Complaint alleges nothing about Plaintiff's "accrued benefit" under the Plan. Instead, he alleges that his benefits commenced at age 62, meaning he *was not* "normal retirement age" (*i.e.*, 65) when he began receiving his benefits. Compl. ¶ 84; Ex. 3, TWU Plan, at §§ 2.66, 6.1. Moreover, the Plan provides a *fully subsidized* benefit at age 62—meaning that benefit is *more* valuable than Plaintiff's "accrued benefit." *Id*. at §§ 7.2(a), (b); *supra* n.4. The only benefit amount Plaintiff alleges in his Complaint is the fully subsidized—and thus more valuable—benefit he began receiving at age 62, but not the value of his accrued benefit at normal retirement age. This means the Complaint alleges *no facts* about Plaintiff's "accrued benefit" and thus no comparison of his current QJSA to that accrued benefit—which is what § 1055 governs. The Complaint does not (and cannot) allege a violation of § 1055, so Plaintiff's claim fails as a matter of law.[8]

### E. Plaintiff Fails to State a Claim of Fiduciary Breach

In Count II, Plaintiff claims that Defendants breached their fiduciary duties under ERISA— by simply complying with the Plan document and administering it according to its terms (including

---

[8] This can be illustrated by continuing the simple example above (at n.4). If Plaintiff's "accrued benefit" under the Plan—meaning payments starting at age 65—was $1,000/month, the actuarial equivalent of his accrued benefit at age 62 (using the assumptions for lump sums, as Plaintiff claims is required) would be something lower (say, *e.g.*, $950). In other words, the "accrued benefit" is worth *less* ($950) than if Plaintiff began receiving $1,000/month at age 62 as a subsidized early retirement benefit ($1,000). But Plaintiff does not allege his "accrued benefit"—the $1,000/month at age 65 in this example—and does not compare the *value* of that "accrued benefit" to the subsidized benefit he is actually receiving under the Plan terms.

its actuarial assumptions). Compl. ¶¶ 100-114. This claim fails for several independent reasons.

First, this claim is derivative of Plaintiff's claim in Count I, which contends that Defendants were required to override the governing Plan document and use "reasonable" actuarial assumptions instead. Count II therefore fails for the same reasons. *See Watt* Order at 9; *Reichert* Order at 5.

Second, Plaintiff does not challenge *fiduciary conduct* at all; rather, he claims the Plans' unambiguous terms violate ERISA as a matter of law. It is axiomatic that Defendants can be liable for a fiduciary breach only if they acted in a fiduciary capacity with respect to the conduct alleged. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (The "threshold question" for every fiduciary breach claim is "whether [defendant] was acting as a fiduciary . . . when taking the action subject to complaint"). But the adoption or amendment of an ERISA plan is a clear "settlor" act. *Hughes Aircraft*, 525 U.S. at 444. Because Plaintiff challenges the Plans' terms—specifically, their actuarial assumptions—he does not challenge any action or conduct undertaken by Defendants as fiduciaries, and the Complaint does not plausibly allege facts to establish a fiduciary breach.

Third, even if Plaintiff challenges fiduciary conduct, ERISA imposes no duty to ignore the Plan's written terms just because a future plaintiff might claim they violated the statute. To the contrary, ERISA expressly requires that a fiduciary discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III." 29 U.S.C. § 1104(a)(1)(D). From this statutory duty to adhere to a plan, Plaintiff posits some inverse duty to *disregard* terms that are not "consistent with" other provisions in ERISA. But this "logical fallacy" does not follow from § 1104(a)(1)(D)'s statutory text. *Sec'y of Labor v. Macy's, Inc.*, 2022 WL 407238, at *5 (S.D. Ohio Feb. 10, 2022). Simply because ERISA "imposes a fiduciary duty to *follow* plan documents that are consistent with ERISA" does not mean there is "a fiduciary duty *not to follow* plan

14

documents that are not consistent with ERISA." *Id.*[9] Moreover, the Plans' terms were not inconsistent with "the provisions of this subchapter and subchapter III," 29 U.S.C. § 1104(a)(1)(D), because nothing in ERISA mandates how to calculate actuarial equivalence.

Finally, as part of Count II, Plaintiff alleges American Airlines breached its duty to monitor the Committee by "allowing [it] to pay benefits that were not actuarially equivalent." Compl. ¶ 109. This claim is wholly derivative of Plaintiff's primary claims above, and it fails for the same reasons. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018); *Camera v. Dell Inc.*, 2014 WL 960897, at *5 (W.D. Tex. Feb. 26, 2014). Beyond being derivative, Plaintiff's failure-to-monitor claim also is deficient because it rests entirely on legal conclusions, without any factual allegations about the process for monitoring the Committee (much less how it was deficient). *See, e.g.*, *Harmon v. FMC Corp.*, 2018 WL 1366621, at *5 (E.D. Pa. Mar. 16, 2018) (explaining this claim "falls short" where it "offers no direct allegations of flaws in [d]efendants' process"); *Nicolas v. Trs. of Princeton Univ.*, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (similar).

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint does not state a claim and should be dismissed with prejudice.

---

[9] *See also, e.g.*, *Cement & Concrete Workers Dist. Council Pen. Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 184 (E.D.N.Y. 2005), *aff'd*, 199 F. App'x 29 (2d Cir. 2006) (concluding that "[t]rustees do not breach their fiduciary duties under ERISA simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions"); *Paul v. RBC Capital Mkts. LLC*, 2018 WL 3630290, at *7 (W.D. Wash. July 31, 2018) ("[C]orrectly enforcing a flawed plan does not support a breach of fiduciary duty claim as a matter of law.").

DATED: December 3, 2024

Respectfully submitted,

*/s/ Matthew A. Russell*

Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
312-324-1000
312-324-1001 (fax)
matthew.russell@morganlewis.com

Jeremy P. Blumenfeld (lead)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
215-963-5258
215-963-5001 (fax)
jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants American Airlines, Inc., and the Employee Benefits Committee*

## **CERTIFICATE OF FULFILLMENT OF MEETING REQUIREMENTS**

Pursuant to this Court's requirement that counsel engage in a good-faith attempt to resolve or narrow disputed issues before a motion is filed, the parties conferred about Defendants' Motion to Dismiss Plaintiff's Complaint, but were unable to resolve or narrow the disputed issues.

/s/ Matthew A. Russell
Matthew A. Russell

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on December 3, 2024, the foregoing ***Defendants' Memorandum of Law In Support of Motion to Dismiss Plaintiff's Complaint*** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to all parties of record.

<u>/s/ Matthew A. Russell</u>
Matthew A. Russell