**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS PARISI on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5, <br><br> Defendants. | Case No. 1:24-cv-09271 <br><br> Hon. Judge Sunil R. Harjani |

**MEMORANDUM OF LAW IN OPPOSTION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I. INTRODUCTION

Plaintiff Thomas Parisi, a retired American Airlines mechanic, alleges that he is not receiving an actuarially equivalent qualified joint and survivor annuity ("QJSA") from American Airlines' pension plan in violation of ERISA § 205(d), 29 U.S.C. § 1055(d). His pension payments are too low because they are less than the actuarial equivalent of the single life annuity ("SLA") he was offered at retirement, in violation of 29 U.S.C. § 1055(d). Complaint, ECF 1, ¶¶ 1, 95-99.

Defendants wrongly argue that ERISA's "actuarial equivalent" requirement merely requires plans to state *any* method for how QJSA benefits will be calculated, however absurd that method, in a written plan document. Defs. Mem., ECF 19.[1] But ERISA § 402, 29 U.S.C. § 1102 already requires plans to "specify the basis on which payments are made." Defendants' interpretation of the statute impermissibly renders § 1055(d)(1)(B) redundant and meaningless. Their motion to dismiss should be denied.

## II. STATEMENT OF FACTS

American Airlines sponsors the Plans.[2] Each is a defined benefit pension plan. Compl., ¶ 1. Under the Plans, employees earn benefits in the form of SLAs, a pension benefit payable to the employee for the employee's life. *Id.*, ¶ 45. The Plans also offer QJSAs, which provide an annuity for the participant's life with a contingent annuity payable to the participant's spouse after the participant's death. *Id.*, ¶¶ 4-5. A QJSA is expressed as a percentage of the amount paid during the

---

[1] "Defs. Mem." refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint, ECF 19.
[2] The Plans are (a) the Retirement Benefit Plan of American Airlines, Inc. for Employees Represented by the Transport Workers Union of America, AFL-CIO (the "TWU Plan"), (b) the Retirement Benefit Plan of American Airlines, Inc. for Agent, Management, Specialist, Support Personnel and Officers (the "Management Plan"), (c) The Retirement Benefit Plan of American Airlines, Inc. for Flight Attendants (the "Flight Attendants' Plan"); and (d) American Airlines, Inc. Pilot Retirement Benefit Program (the "Pilots Plan"). Compl. ¶ 1 n.1. Plaintiff is a participant in the TWU Plan. *Id.* ¶ 19.

1

participant's life to the surviving spouse after the participant's death. *Id*., ¶ 4. Plaintiff Thomas Parisi is receiving a 50% QJSA with his wife as the beneficiary. *Id*., ¶ 19.[3]

The amount payable to a participant in the form of a QJSA is lower than the amount payable as an SLA because the QJSA accounts for the possibility that the Plan will pay benefits longer if the participant dies before their spouse. *Id*., ¶ 5. To calculate QJSA benefits, Defendants use the amount the participant is entitled to receive as an SLA when benefits begin and convert it to a QJSA using the UP-1984 mortality table (the "UP-84") and a 5% interest rate. *Id*., ¶ 11. The UP-84 overstates mortality rates because it is based on data that is **over 50 years old**. *Id.*

The Plan's flawed formulas depress the present value of QJSAs, resulting in lower monthly payments than if Defendants used up-to-date, reasonable actuarial assumptions. *Id*., ¶ 12. In sum, Defendants did not provide Plaintiff and Class Members with actuarially equivalent benefits like ERISA requires. They receive lower benefit amounts each month, which will continue to affect them throughout their retirements. *Id*.

## III. ARGUMENT

The Complaint plausibly alleges that the Plans' QJSAs do not provide "the actuarial equivalent of a single annuity for the life of the participant" that ERISA requires in 29 U.S.C. § 1055(d)(1)(B). "Actuarial equivalent" is a term of art which requires the use of reasonable assumptions. Plaintiff seeks a recalculation of his benefits, among other remedies, so that his QJSA is actuarially equivalent to his SLA. Defendants seek to dismiss his claims, raising arguments which render the term "actuarial equivalent" meaningless. Defendants also wrongly argue that Plaintiff's accrued benefit is only his SLA at age 65, that he brings claims under the Treasury

---

[3] For example, Parisi's monthly benefit is $1,712 for his life. If he pre-deceases his wife, the monthly benefit for the remainder of his spouse's life will be $856. *Id*., ¶ 84.

Regulations, and that plan fiduciaries cannot breach their fiduciary duty by paying benefits that violate ERISA.

### A. Actuarial Equivalence Requires Reasonable Assumptions

Defendants wrongly contend that "ERISA does not require using 'reasonable' assumptions to calculate" QJSAs because the term is not used in § 1055(d)(1)(B), and because "§ 1055 'does not require a specific set of assumptions, reasonable or not.'" *Id.*, (quoting *Watt v. FedEx Corp.*, No. 2:23-cv-02593, Dkt. No. 66, at 6 (W.D. Tenn. Sept. 18, 2024), appeal filed, No. 24-5945 (6th Cir. Oct. 11, 2024). Defendants are wrong for three reasons. First, Defendants' interpretation conflicts with § 1055(d)'s purpose – to protect employees and their spouses. Second, "actuarial equivalent" is a term of art. By using the term in § 1055(d), Congress presumably intended to adopt its meaning, including the inherent requirement that reasonable assumptions be used. Third, Defendants statutory construction is renders the entire subsection of § 1055(d)(1)(B) duplicative of other sections of ERISA and the phrase "actuarial equivalent" meaningless.

#### 1. ERISA's Actuarial Equivalence Requirement in 29 U.S.C. § 1055(d) Protects Employees and Their Spouses

29 U.S.C. § 1055 protects surviving spouses. "The statutory object of the qualified joint and survivor annuity provisions, along with the rest of § 1055, is to ensure a stream of income to surviving spouses." *Boggs v. Boggs*, 520 U.S. 833, 843-44 (1997). In so doing, the Supreme Court noted the need not to "undermine[]" "ERISA's solicitude for the economic security of surviving spouses." *Id*. Plaintiff's lawsuit concerns this purpose – enforcement of ERISA's protections for surviving spouses under § 1055. *Urlaub v. CITGO Petroleum Corporation*, 2022 WL 523129, *5 (N.D. Ill. Feb. 22, 2022).

Section 1055's requirement that the "stream of income" plans provide to married participants is as valuable as the SLA they earned is consistent with that purpose. "Actuarial

3

equivalence should be 'cost neutral,' meaning that neither the plan nor participants should be worse off if participants select an SLA or a QJSA." Compl., ¶ 36. "ERISA's actuarial equivalence requirement serves to protect actual retirees, not merely ensure that pension plans perform abstract calculations." *Stephens*, 644 F.3d 437, 443 (D.C. Cir. 2011) (Kavanaugh, J., concurring). Accordingly, "ERISA prohibits" plans from inviting participants to "sell their pension entitlement back to the company cheap" by offering benefit forms that are not actuarially equivalent. *Berger v. Xerox Corp.*, 338 F.3d 755, 762 (7th Cir. 2003).

Defendants wrongly argue that a pension plan's terms are "left to employers and ERISA serves only to protect [the] contractual commitments once made." Defs. Mem. at 6-7. To the contrary, ERISA sets certain "minimum rules," including the actuarial equivalence requirement in 29 U.S.C. § 1055(d). *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 510 n. 5 (1981). "The Plan cannot avoid that which is dictated by the terms of ERISA. While ERISA generally allows each plan to select the monetary amount of benefits provided, it remains a paternalistic regulation designed to restrict the freedom of contract." *Williams v. Rohm and Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007); *see also Esden v. Bank of Boston*, 229 F.3d 154, 172 (2d Cir. 2000).

"[D]efendants' interpretation of section 1055 would 'force married workers … to choose between (1) more valuable types of pension benefits—e.g., SLAs and lump-sum payments—that might leave their spouses and children penniless were they to die, or (2) JSAs that were worth less.'" *Urlaub,* 2022 WL 523129, at *5 (quoting plaintiffs' brief); *see also Masten*, 543 F. Supp. 3d 25, 35 (S.D.N.Y. 2021) ("some limits on the discretion of plan administrators in the selection of actuarial methodology are necessary to effectuate the protective purposes of ERISA.").

2. **Plaintiff Plausibly Alleges He Did Not Receive an Actuarially Equivalent Benefit under 29 U.S.C. § 1055**

Courts must enforce "statutory language in ERISA, as in any statute, according to its terms." *Intel Corp. Invest. Policy Committee v. Sulyma*, 589 U.S. 178, 184 (2020). "Actuarial equivalence" is a term of art. *Stephens*, 644 F.3d at 440. "When Congress employs a term of art, that usage itself suffices to adopt the cluster of ideas that were attached to each borrowed word in the absence of indication to the contrary." *George v. McDonough*, 596 U.S. 740, 753 (2022); *see also Simon v. Cooperative Educ. Serv. Agency # 5*, 46 F.4th 602, 607 (7th Cir. 2022) (looking to the "generally understood meaning" of a term of art used in a statute); *Adams v. U.S. Bancorp*, 635 F. Supp. 3d 742, 751 (D. Minn. 2022) (addressing actuarial equivalence and explaining that "[i]f 'Congress has used technical words or terms of art, it is proper to explain them by reference to the art or science to which they are appropriate.'" (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 201 (1974)).

As Plaintiff alleges in his Complaint, the term "actuarial equivalence" has a "generally understood" meaning. *See*, *e.g.*, Compl., ¶¶ 29-37. "Two modes of payment are actuarially equivalent when their present values are equal under a given set of assumptions." *Stephens*, 644 F.3d at 440. Not all assumptions generate actuarial equivalence. "Special attention must be paid to the actuarial assumptions underlying the computations." *Pizza Pro Equip. Leasing v. Comm. of Revenue*, 147 T.C. 394, 411 (U.S. Tax Ct. 2016) (emphasis added), *aff'd*, 719 F. App'x 540 (8th Cir. 2018); *see also Berger*, 338 F.3d at 759 (explaining how using different actuarial assumptions produces "dramatic differences" in present values).

The use of reasonable assumptions is baked into the actuarial profession's definition of actuarial equivalence. Compl., ¶¶ 33, 50, 57. "Reasonable" is not a generic term to actuaries; it is defined, with specific criteria for how actuaries select each assumption. *Id*., ¶ 50 (Actuarial

5

Standards of Practice require actuaries to use "reasonable" economic assumptions that "reflect the actuary's estimate of future experience.") and ¶ 57 (actuaries must select mortality tables that reflect improvements in mortality). Likewise, the Society of Actuaries' article entitled "Actuarially Equivalent Benefits" – the one the court in *Stephens* cited for the term's "established meaning – instructs actuaries that "[p]eriodically, the assumptions used [for actuarial equivalence] must be reviewed and modified so as to insure they continue to fairly assess the cost of the optional basis of payment." *Id.*, ¶ 37 (citing Jeff L. Schwartzmann and Ralph Garfield, Education and Examination Comm. of the Society of Actuaries, Actuarially Equivalent Benefits (1991)).

Plaintiff's allegations concerning the meaning of "actuarial equivalence" are not novel. Statistically valid actuarial tables have served as the baseline for the pension plan industry since at least 1843. *City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702, 725-26 (1978) (Berger joined by Rehnquist, concurring in part). Calculating actuarial equivalence involves using "reasonable" mortality assumptions – i.e., those reflecting how long the plan's **current** participants and beneficiaries will live. *See*, *e.g.*, *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000) (plans should use a mortality assumption that reflects the "plan's participants" when calculating actuarially equivalent benefits); *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816, 817 (7th Cir. 2007) ("The longer a person's life expectancy, the greater the value of an annuity to him (because it will be received, on average, for more years…"). Here, Plaintiff alleges that he is not receiving an actuarially equivalent benefit because Defendants calculated his QJSA using 50-year-old mortality data, when people had shorter life expectancies. Compl., ¶ 11. This resulted in Plaintiff receiving a monthly benefit that is less than an actuarially equivalent amount. *Id.*, ¶ 84.

Most courts that have analyzed this issue have found that § 1055(d) requires the use of reasonable assumptions to measure actuarial equivalence. The court in *Urlaub* held when interpreting § 1055(d) that "it cannot possibly be the case that ERISA's actuarial equivalence requirement allow the use of unreasonable mortality assumptions." 2022 WL 523129, at * 6. In doing so, the court relied on the "plain meaning of the term actuarial equivalence" and concluded that that "[o]nly accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two." *Id.*[4]

Similarly, in *Dooley v. American Airlines, Inc.*, the plaintiffs alleged that they did not receive actuarially equivalent benefits. The Seventh Circuit reversed on summary judgment, finding an issue of fact concerning which interest rate was "appropriate" because the plaintiff's expert contended "actuarial equivalence must be determined on the basis of reasonable actuarial assumptions, consistently applied, including a reasonable interest assumption." *Dooley*, 797 F.2d 1447, 1453 (7th Cir. 1986). On remand, the district court stated:

> Where the terms of a plan subject to ERISA provide that plan participants may opt to receive their accrued pension benefits in forms other than as a single life annuity, the amount payable to the plan participant under such circumstances must be "actuarially equivalent" to the participant's accrued benefits when calculated as a single life annuity. The term "actuarially equivalent" means equal in value to the present value of normal retirement benefits, determined on the basis of actuarial assumptions with respect to mortality and interest which are reasonable in the aggregate.

---

[4] *See also Herndon v. Huntington Ingalls Indus., Inc.*, No. 4:19-CV-52, 2020 WL 3053465, * 2 (E.D. Va. Feb. 20, 2020), ("[u]nder a straightforward and plain reading of [§ 1055(d)] and regulations, Defendants must use 'reasonable' data to ensure that Plaintiff is receiving benefits that are equivalent to a single life annuity"); *Masten,* 543 F. Supp. 3d at 29 (§ 1055's "[i]mplementing regulations…direct employers to use 'reasonable actuarial factors' to determine…actuarial equivalence…."); *Smith v. Rockwell*, 438 F. Supp. 3d at 921 (plans must "use the kind of actuarial assumptions that a reasonable actuary would use.); *Cruz,* 435 F. Supp. 3d at 352; *Skrtich v. Pinnacle West Capital Corp.*, No. CV-22-01753-PHX-SMB, Dkt. No. 29 (August 7, 2023) (finding that § 1055 "requires actuarial *equivalence* and the calculation of that equivalence necessitates the use of reasonable assumptions.").

7

*Dooley*, No. 81-cv-6770, 1993 WL 460849, *10 (N.D. Ill. Nov. 4, 1993).

      **3.    Defendants' Interpretation of 'Actuarial Equivalent' Renders the Statutory Provision Meaningless**

Defendants wrongly argue that they satisfy ERISA's actuarial equivalence requirement because "as required by law, the written Plan document specifies the actuarial assumptions for" QJSA calculations. Defs. Mem. at 5. Defendants conflate two distinct sections of ERISA.

ERISA requires plans to "specify the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(b)(4). This means that plans must specify the formula or, as applicable, the actuarial assumptions used to calculate each form of benefit. *McDaniel*, 203 F.3d at 1117; *see also* 26 U.S.C. § 401(a)(25) (requiring plans to provide "definitely determinable" benefits by specifying the plan's formula in the plan document).

But § 1055(d) imposes a separate requirement, mandating plans to provide actuarially equivalent QJSAs. Combining the requirements, a plan's benefit formula must provide QJSAs which are ***both*** actuarially equivalent ***and*** specified in the plan document. *McDaniel*, 203 F.3d at 1117 (describing the distinct requirements); *see also Esden*, 229 F.3d at 166 and n.16 (finding the plan satisfied the "definitely determinable" requirement by specifying interest rate but violated ERISA's actuarial equivalence requirement because that rate did not provide actuarial equivalence).

Defendants' "anything goes" definition of "actuarial equivalence" renders the statutory term meaningless. If the "actuarial equivalent" requirement in § 1055(d)(1)(B) simply required plans to follow the plan document, all QJSAs would be actuarially equivalent, no matter which assumptions are used to calculate them. "Taken to the extreme, the defendants' argument suggests that they could have used any mortality table – presumably, even one from the sixteenth century – to calculate the plaintiffs' JSAs. If this were true, the actuarial equivalence requirement would be

8

rendered meaningless." *Urlaub*, 2022 WL 523129, at * 6; *see also Miller v. Xerox Corp. Ret. Inc. Guar. Plan*, 464 F.3d 871, 876 n. 5 (9th Cir. 2006) ("ERISA's actuarial equivalence requirement" cannot be meaningless); *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018) ("Absent clear evidence that Congress intended this surplusage, the Court rejects an interpretation of the statute that would render an entire subparagraph meaningless.").

Defendants' reliance on Congress's explicit requirement to use reasonable actuarial assumptions for some ERISA calculations is misguided; the provisions Defendants cite do not involve calculating actuarially equivalent benefits. 29 U.S.C. § 1083(h)(1) relates to "calculating funding" and 29 U.S.C. § 1393(a)(1) relates to "[w]ithdrawal liability." Defs. Mem. at 7. Neither calculation involves converting one form of benefit to another. Funding calculations, for example, require the actuary to select an investment return assumption, which is not relevant in an actuarial equivalence calculation. Defendants reference present value calculations, but Congress did not rely on the industry meaning of "present value" – it explicitly defined the term in 29 U.S.C. 1002(27). In contrast, Congress does not define actuarial equivalence, relying on the industry definition in 29 U.S.C. § 1055(d)(1)(B). *See George*, 596 U.S. at 753.

Defendants' argument with respect to lump sums is similarly misguided. When Congress dictated that plans must use *specific assumptions* to calculate lump sums, *see* Defs. Mem. at 9 (discussing 29 U.S.C. 1055(g)), it elected uniformity over plan-specific reasonable assumptions. Plaintiff alleges that the Treasury Assumptions produce reasonable mortality estimates for *the American Airlines Plans' populations*, Plaintiff does not allege that the Treasury Assumptions produce reasonable mortality estimates for *all plan populations*.

In sum, § 1055(d)(1)(B) uses a term of art, "actuarial equivalent" to add substantive requirements to QJSAs. § 1055(d)(1)(B) is not a meaningless subsection.

9

B.   **QJSAs Must Be Compared to the Accrued Benefit Payable at a Participant's Retirement Date.**

ERISA defines an "accrued benefit" as "the individual's accrued benefit determined under the plan . . . ." 29 U.S.C. § 1002(23)(A). Section 1055(a) requires that plans provide a QJSA that is actuarially equivalent to the "accrued benefit *payable*" under a plan on the participant's "*annuity starting date*." ERISA § 205(a), 29 U.S.C. § 1055(a) (emphasis added). The term "payable" in § 1055(a) means the amount the plan "is under an obligation to pay." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 542 (6th Cir. 2003). Combined, §§ 1055(a) and (d) require that the participant's QJSA be the actuarial equivalent of the SLA available on that annuity start date. *Masten*, 543 F. Supp. 3d at 29; *Urlaub*, 2022 WL 523129, at *6 (§ "1055 requires actuarial equivalence between JSAs and SLAs at the time of actual retirement"). Here, Plaintiff alleges the QJSA benefits he is receiving are not actuarially equivalent to the SLA he was offered on his annuity start date, the exact comparison that § 1055(d) requires. Compl., ¶ 86. Plaintiff's benefits were "payable" on his "annuity start date" at age 62 when he started receiving benefits, not at age 65.

The Treasury Regulation concerning §1055(d) support this position. 26 C.F.R. § 1.401(a)-20, Q&A 16 provides that a "QJSA must be at least as valuable as any other optional form of benefit *payable under the plan at the same time*." (emphasis added). Interpreting the applicable statutory and regulatory language, the court in *Cruz* held that § 1055(d) required the comparison of the JSA the plaintiff started receiving at age 55 to the SLA the plaintiff was offered at the same age. *Cruz*, 435 F. Supp. 3d at 351-52.

Defendants wrongly argue that § 1055(d), "applies only to a participant's accrued benefit" "*commencing at normal retirement age*." Defs. Mem. at 13 (emphasis in original). ERISA requires that a plan's "accrued benefit" be "expressed in the form of an annual benefit commencing at

10

normal retirement age." *Id*. (quoting 29 U.S.C. 1002(23)).[5] The TWU Plan's "accrued benefit," for example, is expressed as an SLA commencing when a participant is age 65. But a participant's "accrued benefit" starting at age 65 is not necessarily the same as the one "***payable***" to him if starting benefits at a different age. *See*, *e.g., Berger*, 338 F.3d at 758 ("If the employee leaves the company before he reaches the normal retirement age…his pension entitlement, is the benefit that he has "accrued" to the date of his leaving."). The TWU Plan, for example, reduces a participant's "accrued benefit" if he starts benefits without achieving specified age and service requirements. Ex. 3, TWU Plan, at § 7.2(a). The age-65 SLA is not "payable" to participants who retire early. *Shields*, 331 F.3d at 542. Defendants' interpretation ignores that § 1055(a) requires that a plan provide a QJSA that is actuarially equivalent to the "accrued benefit ***payable***" under a plan on the participant's "***annuity starting date***."

The defendants in *Urlaub* similarly argued that § 1055(d) required the comparison of the plaintiff's JSA to the plan's accrued benefit expressed as an age-65 SLA. *Urlaub*, 2022 WL 523129. at * 3-4. After analyzing the statutory and regulatory language, the court found that § 1055(d) "requires actuarial equivalence between JSAs and SLAs at the time of actual retirement." *Id.* at * 5. This Court should follow *Urlaub*.

Section 1055(d) by its plain language does not have an exception for subsidized early retirement benefits. Defs. Mem. at 13. A subsidized early retirement QJSA must be actuarially equivalent to a subsidized early retirement SLA. This is because § 1055(d) ensures that a spouse receives a benefit that is actuarially equivalent SLA available to the participant, regardless of whether those benefits are early or subsidized.

---

[5] Defendants do not cite any cases that support their arguments regarding the accrued benefit. *See* Defs. Mem. at § IV(D) (citing no cases).

C. **While the Treasury Regulations Support Plaintiff's Claims, Plaintiff Brings Statutory Claims.**

Consistent with Plaintiff's interpretation of actuarial equivalence, "Treasury Department regulations require employers to use 'reasonable' actuarial assumptions to determine actuarial equivalence." *Cruz*, 435 F. Supp. 3d at 352.[6] ERISA's regulations also rely on the standards set by the American Society of Actuaries (the "SOA"), which Plaintiff alleges require actuaries to use "reasonable assumptions." Compl., ¶ 43 (citing ASOP No. 27, § 3.6 ("each economic assumption used by an actuary should be reasonable") and ASOP No. 35, § 3.3.5 ("Each demographic assumption selected by the actuary should be reasonable").[7] An economic assumption is "reasonable" under the ASOPs if it "takes into account historical and current economic data that is relevant as of the measurement date," and "reflects the actuary's estimate of future experience." Compl., ¶ 66 (citing ASOP No. 27, § 3.6 (emphasis in original).

Defendants incorrectly suggest that Plaintiff brings this case under the Treasury Regulations. Defs. Mem. at 10 ("no Treasury regulations are enforceable or applicable to § 1055(d)") (citation omitted). Instead, Plaintiff claims that his QJSA benefits violate the actuarial equivalence requirement in § 1055(d). Compl, ¶¶ 1, 86, 95-99. He cites the Treasury Regulations

---

[6] 26 C.F.R. § 1.401(a)-11(b)(2) ("[e]quivalence may be determined, on the basis of consistently applied ***reasonable actuarial factors***…." (emphasis added); 26 C.F.R. § 1.411(a)-4(a) ("[c]ertain adjustments to plan benefits such as adjustments in excess of ***reasonable actuarial reductions*** can result in rights being forfeitable." (emphasis added)).

[7] Defendants argue that "[t]he ASOPs do not require using "reasonable" assumptions *to calculate individual benefits*, the purpose relevant here." But courts look to the professional actuarial standards as part of this analysis. *See, e.g.*, *Stephens*, 644 F.3d at 440 (citing Schwartzmann & Garfield); *see also McDaniel*, 203 F.3d at 1110 (citing American Academy of Actuaries' publication). American Academy of Actuaries' Applicability Guidelines, which describe the ASOPs that an actuary should follow when performing services, identify ASOPs 27 and 35 when actuaries provide advice on the "selection of assumptions for plan's actuarial equivalence." *See Applicability Guidelines for Actuarial Standards of Practice*, American Academy of Actuaries, https://www.actuary.org/content/applicability-guidelines-actuarial-standards-practice-0, Exhibit 1 at 4 (last viewed January 30, 2025) (selected sections, emphasis added).

12

to bolster his statutory claims, not to make claims under the regulations. The court in *Smith v. U.S. Bancorp*, No. 18-cv-3405, 2019 WL 2644204 * 2 (D. Minn. June 27, 2019), rejected an identical argument with respect to the actuarial equivalence requirement in another section of ERISA, 29 U.S.C. § 1054(c)(3):

> Plaintiffs allege that the related regulations impose a reasonableness requirement on underlying actuarial calculations and provide guidance on the factors that go into any actuarial adjustments. Defendants contend that Plaintiffs' claims arise under these regulations, which do not provide for a private right of action. ***This argument ignores that the regulations merely provide guidance, and the relief Plaintiffs seek is for violation of the actuarial equivalence requirement of § 1054(c)(3), not for violation of the Tax Code and Treasury regulations.*** Indeed, courts have often referred to the same regulations Plaintiffs cite to assist in actuarial equivalence analyses in ERISA cases.

*Id*. at *2 (emphasis added) (citations omitted); *see also Costantino v. TRW, Inc.*, 13 F.3d 969, 978-82 (6th Cir. 1994) (deciding ERISA claims by discussing "a key Treasury Department regulation," finding that it was a "reasonable clarification" of ERISA's protections).

### D.     Plaintiff States a Plausible Claim for Breach of Fiduciary Duty.

Plaintiff plausibly alleges that Defendants breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104. Compl., ¶¶ 1, 100-114. He alleges that Defendants "had authority or control over the determination of the amount and payment of benefits from the Plans" *Id.*, ¶ 103. Defendants' control over the "amount" of benefits is subject to the terms of ERISA, including the power, duty, and responsibility to direct the administration of the Plans in accordance with the requirements of ERISA. *Id.*, ¶ 106. Accordingly, Defendants had the power and duty to override the Plan to pay benefits in amounts that were consistent with ERISA. Defendants' argument that Plaintiff fails to state a breach of fiduciary duty claim, Defs. Mem. at 13, misstates Plaintiff's claims. Contrary to Defendants' arguments, this case is not about the adoption or amendment of the Plan, Defs. Mem. at 14; it is about Defendants' payment of benefits in amounts that were too

13

low.

As ERISA fiduciaries, Defendants can follow the Plan's terms only "insofar as such documents and instruments are consistent" with ERISA's substantive requirements. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420 (2014). In rejecting the same argument Defendants make here, the Supreme Court stated:

> Consider the statute's requirement that fiduciaries act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter." § 1104(a)(1)(D) (emphasis added). This provision makes clear that ***the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary.***…This rule would make little sense if, as petitioners argue, the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document.

*Id*. at 421 (emphasis added.)

Courts before and after *Dudenhoeffer* have applied this rule regarding the fiduciary duty of ERISA plan administrators to override Plan terms that violate ERISA. *See, e.g., Central States, SE & SW Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568 (1985) ("trust documents cannot excuse trustees from their duties under ERISA, and that trust documents must generally be construed in light of ERISA's policies"); *Kuper v. Ivenko*, 66 F. 3d 1447, 1457 (6th Cir. 1995) ("ERISA provides that a fiduciary may only follow plan terms to the extent the terms are consistent with ERISA."); *Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 704 (W.D.N.C. 2010) *aff'd sub nom. McCorkle v. Bank of Am. Corp.*, 688 F.3d 164 (4th Cir. 2012) (plaintiff stated "a valid claim by alleging that Plan fiduciaries failed to ignore the terms of the Plans that effected an [ERISA violation]."); *Masten*, 543 F. Supp. 3d at 36 (denying motion to dismiss breach of fiduciary duty claim based on allegations that the plan's terms violated § 1055(d)); and *Herndon*, 2020 WL 3053465 * 4 (plaintiff stated claim by alleging the defendants "administered the plan in

14

a manner that is inconsistent with ERISA…[and] had the authority…to determine what benefits Plaintiff could receive.").[8]

The same is true here. Plaintiff alleges that Defendants did not administer the Plan consistent with ERISA because they did not pay benefits required by ERISA. ERISA § 404(a)(1)(D) "would make little sense if, as [Defendants] argue, the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document." *Dudenhoeffer*, 573 U.S. at 421 The out-of-district cases Defendants cite, Def. Mem. at 19, are inconsistent with *Dudenhoeffer, Central States* and *Kuper*. The Court should reject Defendants' arguments regarding Plaintiff's breach of fiduciary duty claim.

## IV. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety. To the extent the Court grants the Motion in whole or in part, Plaintiff respectfully moves for leave to amend.

---

[8] Plaintiff notes that these cases cover multiple fact scenarios and issues related to ERISA; they do not just involve ERISA's duty of prudence concerning a plan's investments. *See, e.g., Masten*, 543 F. Supp. 3d at 30, 36.

Dated: January 31, 2025 Respectfully submitted,

                                                                        */s/ Kyle D. McLean*

Kyle D. McLean (Bar No. 6344126)
**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice*)
David J. DiSabato (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: kmclean@sirillp.com
E: ofaircloth@sirillp.com
E: ddisabato@sirillp.com

**MOTLEY RICE LLC**
Douglas P. Needham (*pro hac vice* motion forthcoming)
M. Zane Johnson (*pro hac vice*)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-218-2720
dneedham@motleyrice.com
zjohnson@motleyrice.com

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice*)
Christopher M. Barrett (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com

*Attorneys for Plaintiff*