UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS PARISI, on behalf of himself and all others similarly situated, | No. 1:24-cv-09271 |
| Plaintiff, | |
| vs. | |
| AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE AND JOHN/JANE DOES 1-5 | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ...................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 4

ARGUMENT ................................................................................................................................ 5

I.      Defendants have not established that Texas is clearly more convenient ............................ 6

         A.      Plaintiff's choice of forum is entitled to deference (**Favors Illinois**) ..................... 6

         B.      Location of material events (**Favors Illinois**) ........................................................ 8

         C.      Ease of access to sources of proof (**Neutral**) ......................................................... 10

         D.      Convenience of the witnesses (**Favors Illinois**) ..................................................... 10

         E.      Convenience to the parties (**Favors Illinois**) ......................................................... 12

II.     Transfer to the Northern District of Texas would not be in the interest of justice ............ 13

         A.      Docket congestion and likely speed to trial in each forum (**Favors Illinois**) ........ 13

         B.      Each court's familiarity with the applicable law (**Neutral**) ................................... 15

         C.      The relative desirability of resolving the case in each forum and the relationship of each community to the controversy (**Favors Illinois**) ................... 15

CONCLUSION ............................................................................................................................. 15

This case belongs in Mr. Parisi's home state of Illinois. Defendants have failed to meet their high burden to justify transfer, particularly in an ERISA case, where Congress has imbued participants with the right to have "ready access" to federal courts where the breach took place or where the defendant may be found. Mr. Parisi has lived in Illinois his entire life and he worked as an American Airlines mechanic in Illinois for over three decades. His injury occurred in this District when he received unlawfully reduced pension payments—shortchanged by Defendants' use of outdated, 50-year-old mortality data. American Airlines, moreover, operates a major hub in Chicago, firmly establishing its presence in this District. ERISA's strong policy of protecting participants and ensuring direct access to the courts far outweighs any minor inconvenience to one of the world's largest airlines.

Defendants' motion rests on unsupported assertions of inconvenience, but ERISA's venue provision exists to prevent powerful litigants from manipulating venue to disadvantage plan participants. Courts have rejected similar attempts to override this statutory protection through convenience arguments, especially where, like here, no forum selection clause exists to support transferring the case. Defendants argue it would be inconvenient to litigate in this District, but it would be far more inconvenient for Mr. Parisi (a retiree on a fixed income) to litigate in Texas given the costs a transfer would impose. By contrast, American Airlines, has near-limitless resources and an established presence in Illinois. Defendants fail to meet their heavy burden under § 1404(a) of showing Texas is *clearly* more convenient forum. Indeed, they have not even identified *any* individual witnesses who would be inconvenienced by an Illinois venue. This case is not a fact-intensive local dispute.[1] Rather, at its core, this case involves a legal question driven

---

[1] Defendants contends courts transfer actions against American Airlines to the Northern District of Texas (Motion at 2), but those cases are easily distinguishable. Each involved location-specific facts, key non-party witnesses in Texas, or events that occurred there—none of which apply here. For example, in

1

by expert testimony regarding whether Defendants' joint and survivor annuity calculations comply with ERISA's "actuarial equivalence" requirements. Nothing about this case justifies overriding Plaintiff's chosen forum.

Transferring this case would serve no purpose other than shifting inconvenience from a multibillion-dollar corporation to an individual retiree, undermining both ERISA's statutory venue protections and the interests of justice. The Court should deny Defendants' motion.

## FACTUAL BACKGROUND

**Parisi's Claims**. Parisi alleges that Defendants failed to provide him with an actuarially equivalent pension benefit, as required by ERISA. *See* Complaint ¶¶ 11-12. Specifically, Defendants used actuarial assumptions, including mortality data that is more than 50 years old, to calculate joint and survivor annuity ("JSA") benefits. *Id*. These unreasonable assumptions resulted in Parisi receiving materially lower benefits than the actuarial equivalent of the single life annuity ("SLA") he was offered when he retired. *Id*.

**Parisi and the Class**. Parisi has deep roots in Illinois. He has lived in this state his entire life, and for 32 years he worked as a mechanic for American Airlines at O'Hare Airport, retiring in 2021. He selected his pension benefits in Illinois and continues to receive his monthly payments here. Barrett Decl. ¶ 1. Parisi seeks to represent a nationwide class of retirees who began receiving

---

*Sorensen v. Am. Airlines, Inc.*, the court transferred a tort action where key non-party witnesses were in Texas, and the plaintiff had already filed a related suit there. 2022 WL 2065063, at *4 (S.D. Fla. June 8, 2022). Similarly, *Starks v. Am. Airlines, Inc.* involved a wrongful death claim where medical professionals and other key witnesses resided in Texas, and the decedent passed away there. 368 F. Supp. 3d 866, 868 (D.S.C. 2019). In *Grabham v. Am. Airlines Inc.*, the court transferred the case because the alleged discriminatory conduct and all material witnesses were in Texas. 2019 WL 316213, at *3 (D. Ariz. Jan. 24, 2019). Likewise, *Hoefert v. Am. Airlines Inc.* turned on the presence of critical non-party witnesses in Texas, whose testimony was specifically identified by defendants, and the fact that most material events occurred there. 2018 WL 2740276, at *2 (D. Ariz. June 7, 2018). Finally, in *Adair v. Am. Airlines, Inc.*, the court found that the case had no connection to the chosen forum—none of the plaintiffs lived there, while one resided in Texas. 2010 WL 11570129, at *1 (D.N.J. July 8, 2010). Here, by contrast, Illinois has a direct and substantial connection to the case. Defendants' cited cases provide no basis for transfer.

JSA benefits under the Plans on or after October 1, 2018. While the Plans provide benefits to 54,209 retirees, the vast majority, **76%**, live outside of Texas. Kadam Decl. ¶ 9. In fact, Illinois is home to roughly 2,904 retirees receiving benefits under the Plans. *Id*.

**American Airlines Presence in Illinois**. American Airlines is not a Texas-centric company—it is one of the largest airlines *in the world* with a substantial presence in Illinois. The company touts that it "offer[s] thousands of flights daily to more than 350 destinations in more than 60 countries" and has major hubs in Chicago, Dallas-Fort Worth, Los Angeles, Miami, New York, Philadelphia, Phoenix, Charlotte, and Washington, D.C. *Id*. ¶ 3. American has had a dominant presence at O'Hare Airport for over 60 years. 2018 Article, Ex.1.[2] In 2018, it expanded its operations there, opening five new gates, and "renew[ed]" its "commitment to serving our customers in Chicago and growing our service at O'Hare." *Id*.; *accord* 2019 Article, Ex. 2. In 2023 alone, 211 million passengers boarded American flights. 2023 10-K at 8. Over 300 American flights depart from O'Hare daily. *See* Compl. ¶ 16.

**Plan Administration: From Outside Texas**. Despite Defendants' attempt to frame Texas as the epicenter of plan administration, the Plans are administered ***by Fidelity*** in Massachusetts, Kentucky, and Rhode Island, ***not Texas***. The contract administrator and recordkeeper is a Fidelity subsidiary, headquartered in Massachusetts. Barrett Decl. ¶ 6. Publicly available information confirms that Fidelity, not American, handles administration of the Plans. Barrett Decl. ¶ 7. All pension benefit information transitioned to Fidelity, and pension payments previously sent by State Street from Boston are now issued by Fidelity in Kentucky. *Id*. ¶¶ 8, 9; Ex. 3. Participants are instructed to contact Fidelity, not American Airlines, for questions regarding benefits, payment history, verification of income, and other plan-related services. *Id*. ¶ 11. Critically, Fidelity handles

---

[2] Exhibits 1–3 are attached to the Declaration of Christopher M. Barrett and are cited herein as "Ex __".

all pension estimates, and payments to Parisi come from Fidelity in Kentucky. *Id.* ¶ 9; Ex. 3.

The website also explains that Fidelity will be the "single point of contact," and that the transition affects all active, in-pay, and term vested participants in the Plans. Barrett Decl. ¶ 11. If participants have questions, they are directed to Fidelity, not American. *Id.* Participants contract Fidelity to "ask a question about your benefit," "review your payment history," "change your federal or state tax withholding elections," "add and update direct deposit information," and "request verification of income statements." *Id.* Additionally, Fidelity handles all "pension estimates." *Id.*

**Defendants' Counsel and Expert Witness Location**. Defendants' own lead counsel, Morgan Lewis & Bockius LLP, are based in Chicago, and the expert actuary Defendants retained in *Torres*—a similar pension case brought in the N.D. Texas—is also in Chicago, further demonstrating that key participants in this litigation are already located in this District, ***not Texas***.

## LEGAL STANDARD

An ERISA action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). A motion to transfer should be considered "against a backdrop of judicial and congressional deference to an ERISA plaintiff's choice of forum." *Trustees of Hotel Emps. & Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1182 (N.D. Ill. 1990). "The ERISA venue provision is to be liberally interpreted; Congress intended to expand, rather than restrict, the ERISA plaintiff's choice of forum." *Id*.

The Supreme Court has held that "Section 1404(a) is intended to place ***discretion in the district court*** to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted; emphasis added). Where a plaintiff sues in a proper venue, a defendant may seek

4

transfer under 28 U.S.C. § 1404(a), which provides that a court "may" transfer an action from one proper venue to another "[f]or the convenience of the parties and witnesses" or "in the interest of justice." To determine whether transfer will serve the convenience of the parties and witnesses, and promote the interests of justice, the court must examine both the private and the public interests at stake. *Nalco Co. v. Env't. Mgmt. Inc.*, 694 F. Supp. 2d 994, 998 (N.D. Ill. 2010).

"A Section 1404(a) transfer will be granted if the moving party establishes that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice." *Beesley v. Int'l Paper Co.*, 2007 WL 2458228, at *1 (S.D. Ill. Aug. 24, 2007). The "interest of justice" factors include: (1) the congestions of the respective court dockets; (2) prospects for a speedy trial; and (3) the courts' familiarity with the applicable law. However, "[t]he burden is on the moving party to demonstrate that the ***balance of the factors weighs heavily in favor of transfer*** and that transfer would not merely shift inconvenience from one party to another." *Graham v. UPS*, 519 F. Supp. 2d 801, 809 (N.D. Ill. 2007); *see also Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (movant has the burden of showing transfer is "clearly more convenient"); *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003). ("When [parties] are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of alternative venues is comparable . . . ***the tie is awarded to the plaintiff***" (emphasis added)).

## ARGUMENT

Defendants seek to transfer this case based on vague and unsubstantiated claims of inconvenience. But convenience alone is not enough. Defendants have failed to show that Texas is "clearly" more convenient and that the balance of factors "strongly" favors transfer.

I. **Defendants have not established that Texas is clearly more convenient**

To analyze whether transfer best serves the parties' convenience, the Court considers: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties. *Beattie v. Emerald Expositions*, 2024 WL 4346634, at *9 (N.D. Ill. Sept. 30, 2024).

A. **Plaintiff's choice of forum is entitled to deference (Favors Illinois)**

Defendants have provided no compelling reason to override Plaintiff's chosen forum. Parisi worked in Illinois for his entire 32-year career, accrued his benefits and selected his benefits in Illinois, and is receiving the reduced pension payments in Illinois. Barrett Decl. ¶ 1. This District is where the breach took place,[3] and American Airlines maintains a substantial presence in Illinois, including a major hub at O'Hare.

Defendants concede that Plaintiff's choice of forum is entitled to deference (Motion at 5), and courts have repeatedly emphasized that this deference is heightened in ERISA cases. *See Piper Aircraft Co. v. Re*yno, 454 U.S. 235, 255 (1981); *Cent. States, Se. and Sw. Area Pension Fund v. DT Leasing, LLC*, 2021 WL 5321382, *4 (N.D. Ill. Nov. 16, 2021) ("This is especially true in ERISA cases, where Congress sought to protect…the well being of participants and beneficiaries through a liberal venue provision"). Courts in this Circuit have long recognized that a motion to transfer in an ERISA action "will not disturb the plaintiff's choice of forum ***without clear and convincing evidence*** that a transfer would be proper." *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 1999 WL 447059, at *1 (N.D. Ill. June 25, 1999) (emphasis added; citation omitted); *see*

---

[3] *See MacDonald v. Assocs. for Restorative Dentistry Ltd.*, No. 16-cv-168-TLS, 2016 U.S. Dist. LEXIS 115380, at *6 (N.D. Ind. Aug. 29, 2016) ("The trend among [] district courts is that the place '**where the breach took place' means the place where pension benefits are received**, which is plaintiff's residence . . . . The Court adopts this interpretation of § 1132(e)(2) because it is consistent with principles of statutory interpretation and congressional intent in enacting ERISA." (emphasis added; citations omitted).

6

*also DT Leasing*, 2021 WL 5321382, * 4 (plaintiff's choice "weighs heavily against transfer").[4]

Defendants wrongly argue that Plaintiff's choice should be afforded "minimal" weight because he seeks to represent a class. Motion at 1, 5-6. But, Courts in this District have rejected attempts to discount a plaintiff's choice of forum in class actions noting "that 'unnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel.'" *Fahy v. Minto Development Corp.*, 722 F. Supp. 3d 784, 792 (N.D. Ill. 2024) (citation omitted). That is precisely the case here where Plaintiff's participation in Illinois benefits the class.

Additionally, the early stage of this uncertified case further supports deference to Plaintiff's chosen forum. Whether or not a class is ultimately certified, Parisi will still need to litigate his case individually. *See Bogard v. TikTok Inc.*, 725 F. Supp. 3d 897, 907 (S.D. Ind. 2024). If Defendants' logic were accepted, ERISA class actions could only be filed where the plan is administered, directly undermining Congress's intent to expand venue protections for participants. *See Abbott v. Lockheed Martin Corp.*, 2007 WL 844903, at 2 (S.D. Ill. Mar. 20, 2007) (rejecting argument that ERISA class actions must be brought where the plan is administered, highlighting that "Plaintiffs' choice of forum in ERISA actions is generally accorded substantial deference").

Courts in this District have routinely denied motions to transfer ERISA class actions, recognizing the statute's "liberal venue provision." *DT Leasing*, 2021 WL 532182, * 4; *Fahy*, 722 F. Supp. 3d at 796; *Beesley*, 2007 WL 2458228, at *3; *Curtis*, 2016 WL 6432579, at *6.

Defendants' cases do not support transfer because none of them involved ERISA (Motion at 5), a statute with an intentionally broad venue provision. In *Blumenthal v. Mgmt. Assistance,*

---

[4] *See Cent. States, Se. & Sw. Areas Pension Fund v. Salasnek Fisheries, Inc.*, 977 F. Supp. 888, 890 (N.D. Ill. 1997); *Hanley v. Hyatt Corp.*, 1990 WL 115860, at *2 (N.D. Ill. July 31, 1990).

7

*Inc.*, 480 F. Supp. 470, 474 (N.D. Ill. 1979), the court denied transfer because the defendant failed to establish a "clear balance of inconvenience" in its favor. *Simonoff v. Kaplan, Inc.*, 2010 WL 1195855 (N.D. Ill. Mar. 17, 2010), involved claims under the Fair and Accurate Credit Transactions Act, a statute without ERISA's "liberal venue provision."[5]

In sum, Defendants have failed to present any compelling reason for overriding Plaintiff's well-supported choice of forum.

### B. Location of material events (Favors Illinois)

In this case, the material events occur where the harm was suffered, not where Defendants made internal decisions. *See Chester v. Nat'l R.R. Passenger Corp.*, 2024 WL 1242988, at *2 (N.D. Ill. Mar. 22, 2024) (Harjani, J.) (defining materials events as "those that give rise to the cause of action").[6] While the situs of events can be significant, when a cases involves "legal and financial transactions with little connection to any physical space," as is typical in ERISA claims, courts have found this factor "has little relevance." *DT Leasing*, 2021 WL 532182, * 5 (citation omitted). Here, the situs of material events is Illinois because that is where Parisi accrued his pension, selected his benefits, and receives his unlawfully reduced pension payments. His injury — the harm at the core of this suit — occurred here.

Courts routinely reject defendants' attempts to transfer venue based on where internal policies were formulated, maintaining that the injury to the plaintiff is a key material event. In *O'Connor v. RealPage, Inc.*, 2022 WL 1487374, at *3, the court rejected the argument that

---

[5] *Amorose v. C.H. Robinson Worldwide, Inc.,* 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007) (Motion at 5) is distinguishable because none of the plaintiffs lived in the district where the case was brought. Similarly, in *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908 (N.D. Ill. 2009), (Motion at 5), although the court gave less deference to the plaintiff's venue choice, the court transferred the case because an already pending class action with discovery underway "heavily" favored transfer. *Id.* at 917. That is not true here

[6] *See also Fetter v. Fetter*, 2023 WL 4269855, at *6 (S.D. Ind. June 29, 2023) ("Courts also consider the location of material events in assessing convenience, because 'the most convenient forum is frequently the place where the cause of action arose.'" (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 628 (1964))).

8

material events occurred in Texas where the defendant's procedures were developed finding that "material events also include the injury that [plaintiff] suffered . . . in Illinois." Likewise, in *AL & PO Corp. v. Am. Health. Cap., Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015), the court refused to transfer the case merely because the defendant's decision-making occurred elsewhere, noting that Illinois remained a situs of material events because that is where the plaintiff was injured. *See also Sickman v. Asset Recovery Sols., LLC*, WL 1911431, at *2 (N.D. Ill. Apr. 27, 2015) (holding that the location where plaintiffs received letters is the situs of material events).

Because this case has not yet been certified as a class action, Parisi's injury is the only one currently at issue. If the class is certified, his injury "as the proposed class representative, is likely to be a significant issue." *O'Connor*, 2022 WL 1487374, at *3. Regardless, the putative class is not centered in Texas—76% of participants live outside Texas and thousands reside in Illinois. Kadam Decl. ¶ 9.[7] Even under Defendants' reasoning, the situs of material events is not concentrated in Texas. *AL & PO Corp.*, 2015 WL 738694 at * 3.

Defendants incorrectly claim that material events occurred in Texas because Plan-level decisions were made there. But Parisi does not challenge the Plan's design, establishment, or administration. The critical issue is whether ERISA § 205(d) permits plans to use outdated actuarial assumptions that shortchange retirees. Those assumptions, likely adopted decades ago, no longer produce actuarially equivalent benefits when Parisi retired in 2021. Further, no new discretionary decision was made about how Parisi's benefits were calculated. The harm occurred when outdated mortality data produced pension payments lower than they should have been. Additionally, Defendants admit in their Motion to Dismiss that this case hinges on a legal issue:

---

[7] Additionally, the pension payments to Parisi represent his accrued benefit in JSA form, which accrued in Illinois, not Texas. Moreover, Parisi selected his pension form in Illinois by reviewing benefit estimates prepared by Fidelity in Rhode Island. Barrett Decl. ¶¶ 7, 11.

9

whether ERISA § 205(d) requires reasonable actuarial assumptions or whether any assumptions—no matter how outdated—are permissible. This is a battle of experts, not a case where witnesses in Texas will provide crucial testimony. The necessary pension data is stored by Fidelity, which operates in Massachusetts, Kentucky, and Rhode Island—***not Texas***.

The bottom line is that the events giving rise to this lawsuit occurred where Parisi was harmed: Illinois. At best, some data and administrative processes occurred in Kentucky,[8] but Texas played no role in the determination of his benefits. In other words, Texas has no meaningful connection to this dispute. [9]

### C. Ease of access to sources of proof (Neutral)

The Parties agree this factor is neutral "due to modern electronic discovery practices."

### D. Convenience of the witnesses (Favors Illinois)

Defendants claim "all potential witnesses" are in Texas (Motion at 9) but fail to identify any specific individual witnesses they intend to call or "the ***nature and quality*** of the witnesses' testimony" as required. *Fahy*, 722 F. Supp. 3d at 793 (citation omitted). While they represent that 12 of the 13 members of the Employee Benefit Committee live in Texas (Kadam Decl. ¶ 7), they did not represent whether they would call any of them (much less specify an individual) or explain what their testimony would be.

Defendants have, therefore, failed to meet their heavy burden. *See Fahy*, 722 F. Supp. 3d

---

[8] Defendants reference that American Beacon monitored and allocated Plan investments (Motion at 3), but the monitoring and allocation of assets and investments are irrelevant to the claims here.

[9] Because these "events" and decisions in Texas are not material to Plaintiff's claims, Defendants' cases are inapposite. *See A.M. Castle & Co. v. Byrne*, 2013 WL 5511673, at *3 (N.D. Ill. Oct. 3, 2013) (site is location of decision causing contract breach); *Spherion Corp. v. Cincinnati Fin. Corp.*, 183 F. Supp. 2d 1052, 1058 (N.D. Ill. 2002) (suggests place of contract performance relevant); *Jaramillo, Inc.*, 664 F. Supp. 2d at 914 (locations of decisions were relevant)*; Jasper v. Danone N. Am. Pub. Benefit Corp.*, 2023 WL 4492354 (N.D. Ill. July 12, 2023) (same); *Simonoff*, 2010 WL 1195855, at *2 (location of defendants' conduct, inter alia, distributing and updating software relevant).

at 793; *Perma-Pipe, Inc. v. Liberty Surplus Ins.*, 2013 WL 5348382, at *3 (N.D. Ill. Sept. 24, 2013). To be clear, Plaintiff do not currently intend to call any Committee members as witnesses to prove his claims, but even if he does "the convenience of employee-witnesses is given very little weight." *Fahy*, 722 F. Supp. 3d at 793.

"[C]ourts assign greater weight to the location of non-party witnesses because securing their testimony may require use of compulsory processes and because they are more likely to be inconvenienced." *Bogard*, 725 F. Supp. 3d at 908. Defendants also do not identify any non-party individual witnesses they would call or explain the nature and quality of their testimony. Defendants speculate that "***to the extent either party must call*** or rely on third-party witnesses, they are most likely to be former American employees" (Motion at 9 (emphasis added)) but never identified which employees (out of the tens of the thousands of former employees) they would call, what they would testify about, and why such testimony would be relevant. Defendant also speculated that "***to the extent it becomes relevant***, the third-party actuarial firm that assisted American . . . is located in Dallas, Texas" (*id*. at 10 (emphasis added)), but again Defendants never explained ***why*** it would be relevant, who would be called, and what they would testify about.

As explained above, Plaintiff believes that most of the material facts will not be disputed and, for this reason, intends to call very few witnesses at trial. He will testify and will call an expert to present testimony on Defendants' use of outdated actuarial assumptions in the Plan. However, Plaintiff does not currently intend to call any American employees (former or current), but if he does, he will only call one witness knowledgeable about American's use of more up-to-date mortality tables. These facts, however, can easily be proven with documentary evidence or by stipulation. Plaintiff also does not currently intend to call any non-party witnesses, although he might need Willis Towers Watson to authenticate documents, but that can be accomplished by less

11

burdensome methods or by stipulation.

Defendants will likely call an expert witness but have not disclosed one. Notably, the expert retained by American in *Torres* was located in Chicago. Barrett Decl. ¶ 12. During discovery, Plaintiffs currently intend to depose 30(b)(6) designees for American and Willis Towers Watson (the Plans' actuary), and Defendants' experts. However, Plaintiffs' attorneys agree to depose these witnesses where they reside.

### E. Convenience to the parties (Favors Illinois)

This factor, which strongly weighs against transfer, "consider[s] the residences and resources of the parties—in essence, their ability to bear the expense of trial in a particular forum." *Brunswick Corp. v. Fitness 19 OH 237, LLC*, 2019 WL 2326000, at *4 (N.D. Ill. May 31, 2019) (cleaned up). Parisi, a retiree on a fixed income, seeks an annual pension increase of approximately $1,140 but American is a $50 billion company. *See* 2023 10-K at 82. Forcing him to litigate in Texas would impose a significant burden, whereas American, a global corporation with a major hub in Chicago, can easily absorb the cost of litigating in Illinois. *See DT Leasing, LLC*, 2021 WL 532182, * 5 (transfer does "little more than shift inconvenience from one party to another."). Defendants have not identified ***any*** material witnesses who would face hardship traveling to Illinois. Even if they had, American operates an international airline with daily flights to Chicago. Because "transferring this action would almost certainly inconvenience plaintiff," Defendants have not met their burden. *Beattie*, 2024 WL 4346634, at *10 (citing Rudy, 666 F.Supp.3d at 717). As the Seventh Circuit has made clear, when inconvenience of the forums are comparable, "***the tie is awarded to the plaintiff***." *In re Nat'l Presto*, 347 F.3d at 665 (emphasis added).

Notably, while Defendants claim Texas is their preferred venue, they did not include a forum-selection clause in the Plans. Their failure to formalize this preference undercuts their argument. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63-64

12

(2013) (plaintiffs ordinarily may select whatever forum they consider most advantageous).

## II. Transfer to the Northern District of Texas would not be in the interest of justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (citation omitted). "For this element, courts look to factors including [1] docket congestion and likely speed to trial in the transferor and potential transferee forums; [2] each court's relative familiarity with the relevant law; [3] the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id*. These factors on balance favor keeping the case in this District.

### A. Docket congestion and likely speed to trial in each forum (Favors Illinois)

When ruling on a motion to transfer some courts will consider "docket congestion" statistics. *Edke v. Belden Inc.*, 2021 WL 3022322, at *5 (N.D. Ill. July 16, 2021). The median time from "filing to disposition is the more important figure in complex class actions such as this one, as those cases 'rarely make it to trial and are typically disposed of through initial pleadings, settlement after class certification, or summary judgment.'" *In re Extended Stay Hotel antitrust Litig.*, 2024 WL 5089159, at *5 (N.D. Ill. Dec. 12, 2024); *Edke*, 2021 WL 3022322, at *6 ("this statistic better captures relative docket congestion because comparatively few civil cases are resolved by trial.").

Here, the median time from filing to disposition in the Northern District of Texas is 5.6 months compared to 6.8 months in the Northern District of Illinois (Motion at 13), an immaterial difference. *Johnston-Legg v. Cook*, 2024 WL 4333245, at *5 (N.D. Ill. Sept. 27, 2024) (difference between 5.7 and 8.0 months was "negligible"); *Fahy*, 722 F. Supp. 3d at 796 (difference between 5.7 and 8.2 months not significant). But, this case has already been pending in this District for four months and the parties have spent weeks briefing Defendants' motion to dismiss (based on 7th

13

Circuit case law) — time *will be lost* if the case is transferred. Accordingly, this statistic suggests the case will be disposed of sooner if it stays in this District.

In addition to referencing time to disposition or time to trial, other courts "compare [1] weighted filings per judge in the two forums along with the [2] percentage of pending civil cases more than three years old in each district." *Edke*, 2021 WL 3022322, at *6 (citation omitted); *Roots P'ship v. Lands' End, Inc.*, 1990 WL 186776, at *7 (N.D. Ill. Nov. 14, 1990) ("weighted filings . . . considered the most pertinent statistic"). Here the Northern District of Texas received 575 weighted filings per judgeship with 11% of civil cases over three years old while this District received 598 weighted filings with 12.4% of cases over three years old. These differences are "roughly equal" especially when considering the time and work that will be lost if the case is transferred. *See Vanguard Fin. Serv. Corp. v. Johnson*, 736 F. Supp. 832, 844 (N.D. Ill. 1990) (difference between 626 and 603 weighted filings was "roughly equal").

While the statistic "median time to trial" suggests a case would proceed to trial sooner in the Texas, this statistic "is an average for all case types that says nothing about this particular case." *O'Connor*, 2022 WL 1487374, at *4. In other words, it does not disaggregate ERISA cases (where there is no jury trial) or cases with few witnesses. Accordingly, ***it is not clear how predictive this statistic is for a bench trial*** focused on a few central issues because "a bench trial is ***easier to schedule*** and may be spread over a longer period[10] while a jury trial requires a block of continuous time." *AM Int'l, Inc. v. Eastman Kodak Co.*, 648 F. Supp. 506, 509 (N.D. Ill. 1986). In any event, because a trial is very unlikely,[11] "this factor [is] neutral." *Diment v. Quad/Graphics,*

---

[10] A longer trial is not relevant because median times are computed "the date trial began." https://www.uscourts.gov/sites/default/files/2024-12/explanation-of-selected-terms-september-2024.pdf

[11] *Waters v. Leidos, Inc.*, 2022 WL 657055, at *3 (N.D. Ill. Mar. 4, 2022) (observing that only 1-2% of civil cases go to trial).

14

*Inc.*, 2024 WL 113963, at *4 (N.D. Ill. Jan. 10, 2024).

Because it seems likely the case will be disposed of quickest in this District, this factor weighs slightly in favor of maintaining venue in Illinois.

### B. Each court's familiarity with the applicable law (Neutral)

The parties agree that this factor is neutral. Motion at 14.

### C. The relative desirability of resolving the case in each forum and the relationship of each community to the controversy (Favors Illinois)

Because Plaintiff, American, and nearly 3,000 class members are in Illinois, and the material events occurred here, this factor weighs in favor of denying the Motion. "A court has an interest in resolving issues affecting residents of its district and state, including Illinois consumers allegedly harmed by a nationwide scheme." *FTC v. Acquinity Interactive, LLC*, 2014 WL 37808, at *5 (N.D. Ill. Jan. 6, 2014). Here, the Court has a strong interest in resolving a case where a citizen is harmed in Illinois[12] by an employer found in Illinois. *See Camy v. Triple-S Propiedad, Inc.*, 2015 WL 3856097, at *7 (N.D. Ill. June 19, 2015) (finding "strong interest" in case where residents injured by *out-of-state*-actors"); *see also Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *4 (N.D. Ill. Apr. 11, 2011) ("Because Illinois has a discernible relationship with the present matter, we conclude that this factor cannot influence the transfer of venue."). Accordingly, Defendants' argument that "this District has virtually no meaningful relationship to this case", Motion at 11, is clearly wrong.

## CONCLUSION

Six factors are in favor of venue in Illinois and two are neutral. Accordingly, Defendants have failed to show that Texas is "clearly" more convenient or that the balance is "strongly" in

---

[12] *Fahy*, 722 F. Supp. 3d at 796 (listing as one relationship between Illinois and the controversy was that "the plaintiffs suffered harm in Illinois").

15

their favor. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Transfer.

Dated: January 31, 2025

Respectfully submitted,

*/s/ Kyle D. McLean*
Kyle D. McLean (Bar No. 6344126)
**SIRI & GLIMSTAD LLP**
Oren Faircloth (*pro hac vice*)
David J. DiSabato (*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: kmclean@sirillp.com
E: ofaircloth@sirillp.com
E: ddisabato@sirillp.com

**MOTLEY RICE LLC**
Douglas P. Needham (*pro hac vice* motion forthcoming)
M. Zane Johnson (*pro hac vice*)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-218-2720
dneedham@motleyrice.com
zjohnson@motleyrice.com

**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (*pro hac vice*)
Christopher M. Barrett (*pro hac vice*)
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com

*Attorneys for Plaintiff*