**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS PARISI on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5,<br><br>        Defendants. | Case No. 1:24-cv-09271<br><br>Hon. Judge Sunil R. Harjani |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
<u>**MOTION TO TRANSFER VENUE**</u>

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT .................................................................................................. 2

    A.    Plaintiff Does Not Meaningfully Address the Prior Torres Class Action. ............ 2

    B.    The Private-Interest Factors Favor Transfer to the Northern District of
Texas. ............................................................................................................. 3

        1.    Plaintiff's Choice of Forum Is Entitled to Limited Deference. ................. 3

        2.    Location of the Material Events. ................................................. 5

        3.    The Convenience of the Parties and Witnesses. ........................................ 8

    C.    The Public-Interest Factors Also Support a Transfer to Texas. .......................... 10

III.  CONCLUSION ............................................................................................... 11

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AL & PO Corp. v. American Healthcare Capital, Inc.*,
  2015 WL 738694 (N.D. Ill. Feb. 19, 2015) ....................................................................7, 8

*Amorose v. C.H. Robinson Worldwide, Inc.*,
  521 F. Supp. 2d 731 (N.D. Ill. 2007) .............................................................................9

*Beesley v. Int'l Paper Co.*,
  2007 WL 2458228 (S.D. Ill. Aug. 24, 2007) ..............................................................4, 5

*Cap. Funding Hotel Grp., Ltd. v. Regis Assocs.*,
  1992 WL 296376 (N.D. Ill. Oct. 14, 1992)....................................................................9

*Central States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*,
  2021 WL 5321382 (N.D. Ill. Nov. 16, 2021) ...............................................................4

*Central States Se. & Sw. Areas Pension Plan v. Lakeville Transp., Inc.*,
  2018 WL 11387190 (N.D. Ill. July 2, 2018)..................................................................4

*Chester v. Nat'l R.R. Passenger Corp.*,
  2024 WL 1242988 (N.D. Ill. Mar. 22, 2024).............................................................6, 7

*Curtis v. Wheaton Franciscan Services, Inc.*,
  2016 WL 6432579 (N.D. Ill. Oct. 31, 2016)..................................................................4

*Doe v. Bd. of Trs. of Univ. of Ill.*,
  2006 WL 2792694 (N.D. Ill. Sept. 25, 2006) ...............................................................8

*Fahy v. Minto Development Corp.*,
  722 F. Supp. 3d 784 (N.D. Ill. 2024) ............................................................................5

*Humphrey v. United Healthcare Servs., Inc.*,
  2014 WL 3511498 (N.D. Ill. July 16, 2014)..................................................................3

*Lafleur v. Dollar Tree Stores, Inc.*,
  2012 WL 2280090 (N.D. Ill. June 18, 2012) .................................................................3

*O'Connor v. RealPage Inc.*,
  2022 WL 1487374 (N.D. Ill. May 11, 2022) .................................................................7

*In re Ryze Claims Sols., LLC*,
  968 F.3d 701 (7th Cir. 2020) .......................................................................................10

*Simonoff v. Kaplan, Inc.*,
    2010 WL 1195855 (N.D. Ill. Mar. 17, 2010) .............................................................4

*Torres v. Am. Airlines, Inc.*,
    2020 WL 3485580 (N.D. Tex. May 22, 2020) ............................................... *passim*

*Urlaub v. CITGO Petro. Corp.*,
    2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ..............................................................1

*Warwick v. Schneider Nat'l, Inc.*,
    2020 WL 5891407 (N.D. Ill. Oct. 5, 2020) .............................................................11

**Statutes**

28 U.S.C. § 1404(a) ....................................................................................................4, 9

## I.     INTRODUCTION

As Plaintiff's counsel knows—because they litigated nearly identical claims in a prior ERISA lawsuit against American Airlines—the Northern District of Texas is not only American's headquarters, but it has already considered these same legal issues on behalf of the same (virtually) putative class. *See Torres v. Am. Airlines, Inc.*, 2020 WL 3485580 (N.D. Tex. May 22, 2020). Accordingly, a transfer to that District will move this case to the court with the greater interest in this dispute, while also eliminating any risk of inconsistent rulings on key issues under ERISA. That factor alone warrants a transfer, and Plaintiff's Opposition (Dkt. 29, "Opp.") has no real response. And nearly all other factors—including the site of material events, convenience of witnesses and parties, and congestion of the courts—also favor a transfer.

The Opposition confirms the only factor "favoring" this District over the Northern District of Texas is that Plaintiff selected it. But, as caselaw dictates, that choice is afforded little deference because Plaintiff brings a putative nationwide class action asserting claims that have no connection to this District specifically. Indeed, Plaintiff's opposition to Defendants' contemporaneous motion to dismiss (Dkt. 28) reveals the real reason he and his counsel opted to file in this District instead of the Northern District of Texas where the *Torres* case was filed: forum shopping.  Plaintiff and his counsel apparently think this will be a more favorable forum, given Judge Kennelly's rulings in another ERISA actuarial-equivalence case, *Urlaub v. CITGO Petro. Corp.*, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022). But that is not a proper basis for denying a transfer, especially where Plaintiff cannot dispute that the central events giving rise to his claims in this case—including the design of Plans and their oversight by American employees—occurred in Texas, not Illinois. Contrary to Plaintiff's conclusory assertion that he "does not challenge the Plan's design, establishment, or administration," Opp. at 9, that is exactly what he challenges. He does not claim his benefits were miscalculated under the Plan terms; to the contrary, he concedes his benefits were

1

calculated *correctly* and instead claims the Plan terms violate ERISA. Said differently, the "hub" of this case is the Plans' design and administration—in Texas—whereas the "spokes" are the impact of the Plan terms on thousands of American employees around the country who fall within the proposed class—around 95% of whom live *outside* of Illinois, including more than 25,000 living in Texas. *See* Mot. at 12.

Plaintiff's only other argument is that a transfer would "impose a significant burden." Opp. at 12. But he never says *why*—and the Opposition itself undercuts this alleged prejudice. Plaintiff argues that cases like this raise a common legal issue, come down to a "battle of the experts," and rarely make it to trial. Opp. at 10. Assuming he is right, these are the very reasons Mr. Parisi may never step foot in a Texas courthouse (or in this Court, for that matter). He can be deposed at a convenient location in Illinois. On the flip side, he concedes that nearly *all* American employees— both current *and* former—involved in overseeing the Plans are in Texas. Opp. at 9-10. *Torres*, moreover, involved the same legal issues and battle of the experts, but Plaintiff's counsel had no trouble litigating that case in Texas. In the end, the record is clear that it would be more convenient for the parties, counsel, and witnesses to litigate this case in Texas. The Court should grant American's motion.

## II. ARGUMENT

### A. Plaintiff Does Not Meaningfully Address the Prior *Torres* Class Action.

To start, Plaintiff's Opposition does not explain why the interest of justice weighs in his favor, given that his own counsel sued American in the Northern District of Texas on virtually identical claims on behalf of a virtually identical putative class. Indeed, ***neither*** initial named plaintiff in *Torres* lived in Texas—yet they alleged the *Northern District of Texas* was where

2

"some or all of the violations of ERISA occurred." Mot. at 7.[1] Plaintiff's concession that *Torres* was a "similar pension case" is an understatement, to put it mildly. Opp. at 4. That court already had before it nearly identical claims against American, in a case filed by Plaintiff's same attorneys on behalf of many of the same putative class members Plaintiff now seeks to represent here. Comparing this complaint to *Torres* confirms the allegations and legal claims are virtually the same. *Compare* Dkt. 1 ("Compl."), *with* Dkt. 1, *Torres*.

The Northern District of Texas's familiarity with this dispute, and the substantial threat of potentially inconsistent results that could arise by litigating here, makes transfer appropriate.

### B.      The Private-Interest Factors Favor Transfer to the Northern District of Texas.

Defendants' Motion explained why the private-interest factors in the transfer analysis favor moving this case to the Northern District of Texas. Mot. at 4-14. The Opposition does not refute these arguments, but instead tries to reframe Plaintiff's entire lawsuit into something it is not.

### 1.      Plaintiff's Choice of Forum Is Entitled to Limited Deference.

Plaintiff's first argument is that this Court should deny transfer simply because he chose to file suit here. *See* Opp. at 6-8. But courts in this District have reiterated in various contexts that a plaintiff's choice of forum is entitled only to minimal deference in a proposed nationwide class action. *See, e.g.*, *Humphrey v. United Healthcare Servs., Inc.*, 2014 WL 3511498, at *3 (N.D. Ill. July 16, 2014) ("With regard to [plaintiff]'s choice of forum, because he brings a nationwide class action his choice is not persuasive or entitled to deference."); *Lafleur v. Dollar Tree Stores, Inc.*, 2012 WL 2280090, at *3 (N.D. Ill. June 18, 2012) ("Courts in this district have consistently held that a plaintiff's choice of forum is afforded less deference when the plaintiff represents a class."). And this is particularly true where, as is true here, "another forum has a stronger relationship to

---

[1] Dkt. 1, ¶¶ 16-17, *Torres*, No. 4:18-cv-983 (N.D. Tex.) (alleging plaintiffs lived in Florida and Oklahoma); *id.* ¶ 15 (alleging venue is proper because "some or all of the violations of ERISA occurred in this District").

the dispute." *Simonoff v. Kaplan, Inc.*, 2010 WL 1195855, at *1 (N.D. Ill. Mar. 17, 2010).

Plaintiff responds that this analysis is somehow different when ERISA is involved—but he puts more weight on ERISA's venue provision than it can bear. Nothing in ERISA's venue statute nullifies the transfer analysis under 28 U.S.C. § 1404(a). *See, e.g.*, *Central States Se. & Sw. Areas Pension Plan v. Lakeville Transp., Inc.*, 2018 WL 11387190, at *3 (N.D. Ill. July 2, 2018) (although ERISA plaintiff's choice of forum was entitled to some deference, is it not absolute and will not defeat a well-founded motion to transfer). That Congress may have envisioned a "liberal venue provision" to allow individuals to recover benefits in multiple venues says nothing about whether or to what extent transfer is appropriate here, where one plaintiff seeks to represent a nationwide class of tens of thousands of *other* participants—95% of whom live in states *other* than Illinois. Indeed, the greatest number of participants reside in Texas, where American is headquartered, the Plans are administered and sponsored, and most relevant witnesses reside.

Moreover, the Opposition mixes and matches concepts on this issue. Specifically, Plaintiff asserts that "[c]ourts in this District have routinely denied motions to transfer *ERISA class actions*," citing four cases. Opp. at 7 (emphasis added). But these cases do not support that proposition. First, in *Central States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*, there was no "ERISA class action" *at all*; rather, this was an inapposite non-class suit brough by a pension fund and its trustee over withdrawal liability in a multiemployer pension plan. 2021 WL 5321382 (N.D. Ill. Nov. 16, 2021). In *Curtis v. Wheaton Franciscan Services, Inc.*, plaintiffs filed suit in the defendant's *home district*—i.e., where it was headquartered and the plan was administered— but defendant sought a transfer under a forum-selection clause that did not apply to plaintiffs (and that designated a forum where defendant had "no corporate offices or operations"). 2016 WL 6432579, at *4-5 (N.D. Ill. Oct. 31, 2016). And, although *Beesley v. International Paper Co.* did

4

involve a proposed ERISA class action, the "gist of Defendants' argument for transfer" was "simply that [defendant] is headquartered in" the proposed transferee district and "the individual Defendants in this case live there." 2007 WL 2458228, at *2-3 (S.D. Ill. Aug. 24, 2007). But American's Motion relies on far more—including evidence that roughly 95% of the proposed class members are not in Illinois.

Plaintiff's final cited case, *Fahy v. Minto Development Corp.*, did not even involve ERISA. 722 F. Supp. 3d 784 (N.D. Ill. 2024). Plaintiffs in *Fahy* also sought only an Illinois class, which the court distinguished from putative *nationwide* class actions. *Id.* at 792-93. And, if that were not enough, defendants sought a transfer to the District of Alaska, even though this District was nearby for *all* members of the proposed Illinois class. *Id.* In fact, the *Fahy* court recognized that courts in the Seventh Circuit often discount a plaintiff's choice of forum in the transfer analysis when that plaintiff seeks to represent a nationwide class. *Id.* ("In each of the cases the defendants cite in support of their argument that the plaintiffs' choice of forum should be given little weight, the plaintiff(s) sought to represent a nationwide class. In this case, however, the plaintiffs seek to represent a class consisting only of Illinois residents.") (internal citations omitted). That is precisely what Plaintiff seeks here. And, unlike in *Fahy*, Illinois would not be home for the entire putative class, many of whom Plaintiff's own counsel previously purported to represent in the Northern District of Texas in the *Torres* case.

### 2. Location of the Material Events.

Defendants' Motion explained that, at bottom, Plaintiff challenges the design of the Plans and implementation of their written terms, by claiming the actuarial assumptions specified in the Plans are "unreasonable" and result in joint-and-survivor annuity benefits that violate ERISA. Mot. at 6-8. Thus, there can be no dispute that the material events upon which Plaintiff's claims are based include Plan-level conduct.

5

However, contrary to his Complaint, the Opposition asserts that "Parisi does not challenge the Plans' design, establishment, or administration." Opp. at 9; *contra* Dkt. 1, ¶ 98 (alleging "the methodologies used by Defendants for calculating" Plaintiff's benefits, which are specified in the Plans, "violate ERISA"); *id.* ¶ 108 (alleging "Defendants breached their fiduciary duties by, among other reasons, directing the *administration of the Plan*s in violation of ERISA") (emphasis added). Plaintiff tries to recast his claims as something they are not.

Unable to avoid this, the Opposition focuses instead on where "the harm occurred" or "was suffered," arguing Plaintiff "accrued his pension, selected his benefits, and receives his unlawfully reduced pension payments" in Illinois. Opp. at 8. But these are not the *material* events he challenges. That is, he does not challenge how he "accrued his pension" or "selected his benefits." And he concedes his benefits were calculated *correctly* under the Plan terms as written, and he does not purport to be receiving anything less than the benefits those Plan terms promised. Instead, Plaintiff claims the written Plan terms used to calculate his joint-and-survivor annuity violated ERISA. And, as Defendants explained, the material events underpinning *that* alleged conduct occurred in Texas—including decisions about the Plans' design, their written terms, and how benefits would be calculated pursuant to those terms. Mot. at 6-8.

None of Plaintiff's cases compels a different conclusion. Indeed, Plaintiff relies heavily on a case to suggest that what matters is "where the harm was suffered," but that case is so distinguishable that it proves Defendants' point. *See* Mot. at 8 (citing *Chester v. Nat'l R.R. Passenger Corp.*, 2024 WL 1242988, at *2 (N.D. Ill. Mar. 22, 2024) (Harjani, J.)). In *Chester*, plaintiff was a Chicago resident injured in Houston, Texas, during an Amtrak trip, and he sued in Illinois claiming that after returning to Chicago his injuries "significantly worsened" and he sought medical care. *Id.* at *1-2. Emphasizing the "[m]aterial events are those that give rise to the cause

of action," *id.* at *2, this Court found those events occurred primarily in Texas, not where plaintiff "suffered" the harm. *Id.* at *2-4. Applying this reasoning here, Plaintiff's challenge to the Plans' actuarial assumptions—which were overseen and designed in Texas—is analogous to the accident in *Chester*, and those Plan-level actions and decisions are the material events "that give rise to the cause of action." *Id.*

Defendants' Motion cited several cases involving other "analogous circumstances," where conduct occurred at a corporate level at company headquarters—even if a litigant might feel the impact of that conduct elsewhere. Mot. at 7-8. Plaintiff has no real response. He mischaracterizes two other cases to assert that the place of his alleged injury is the *only* location of the "material events" here. First, he cites *O'Connor v. RealPage Inc.*, 2022 WL 1487374, at *3 (N.D. Ill. May 11, 2022), for the proposition that courts "routinely reject defendants' attempts to transfer venue based on where internal policies were formulated," rather than where a plaintiff feels an injury. Opp. at 8. But in *O'Connor*, the court found that the "situs of material events" was neutral or leaned "slightly ***in favor of transfer***," where the claims targeted "the procedures [defendant] takes when creating, generating, and maintaining tenant reports" at its headquarters in Texas. 2022 WL 1487374, at *3 (emphasis added). Not only that, but plaintiff's claim challenged the defendant's acquisition and use of certain data about a prior Cook County eviction case in a tenant report it produced in Illinois, which was an injury "likely to be an issue" in the case and was specific to Illinois. *Id.* None of this applies to Plaintiff's claims here.

Second, Plaintiff cites *AL & PO Corp. v. American Healthcare Capital, Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015), to argue "the court refused to transfer the case merely because the defendant's decision-making occurred elsewhere, noting that Illinois remained a situs of material events because that is where the plaintiff was injured." Opp. at 9. Again, this description

7

skews the court's actual ruling, which balanced events that occurred both in Illinois (where plaintiff received unsolicited faxes from the defendant) and in California (where defendant's business was located and the decision-making occurred). *AL & PO Corp.*, 2015 WL 738694, at *3. The Court ultimately found the "material events" were not concentrated in *either* state, meaning this factor was "neutral." *Id.* Here, by contrast, Plaintiff challenges the Plans' terms and design, as well as the implementation of those terms. The situs of material events therefore favors a transfer to the Northern District of Texas.

### 3. The Convenience of the Parties and Witnesses.

Plaintiff does not dispute that nearly all potential witnesses—"whether party or third-party witnesses"—are located in Texas. Mot. at 9-10. Instead, he tries to draw a wedge between these two categories, arguing this factor applies less forcefully to party witnesses. Opp. at 11. To start, convenience to party witnesses is still significant, even if "less significant than that of non-party witnesses." *Doe v. Bd. of Trs. of Univ. of Ill.*, 2006 WL 2792694, at *2 (N.D. Ill. Sept. 25, 2006) (citation omitted). But, more importantly, Plaintiff concedes that *no relevant witness* lives in Illinois, while nearly all American employees who were involved in designing, implementing, and/or overseeing the Plans since 2018—*i.e.*, potential witnesses—live in Texas. Plaintiff also admits he may depose a Rule 30(b)(6) designee for Willis Towers Watson, the actuarial firm that assisted American with the Plans—which is located in Dallas, Texas. Opp. at 12. This makes the Northern District of Texas more convenient, as these witnesses would then be within that Court's subpoena power.

If anything, Plaintiff's argument here undermines those he makes elsewhere. He avers that he plans to "call very few witnesses at trial," perhaps an expert and "one witness knowledgeable about American's use of more up-to-date actuarial mortality tables." Opp. at 11. He does not plan to call any "Committee members as witnesses" at trial, or "any non-party witnesses." *Id.* But the

reason he makes these (speculative) assertions is that he "believes that most of the material facts will not be disputed." *Id.* at 11. This undercuts his arguments above that the "material events" giving rise to his claims are Plaintiff's individual injury and benefit calculations in Illinois, distinct from Defendants' Plan-level conduct that applied to all other participants. He cannot have it both ways.

Beyond that, however, American is also entitled to call witnesses it needs to establish its defenses—and there is no dispute that nearly *every* witness who is even potentially relevant in this case is in Texas. Grasping at straws, Plaintiff argues the Court should also consider irrelevant facts, such as that American's lead counsel supposedly is based in Illinois and an expert American retained "in *Torres* was located in Chicago." Opp. at 4, 12. The first assertion is both irrelevant and inaccurate. The location or convenience of counsel has no bearing on the § 1404(a) transfer analysis. *See, e.g.*, *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 736 (N.D. Ill. 2007). And, regardless, the docket shows that American's lead counsel is based in Pennsylvania, not Illinois. As to American's expert in *Torres*, the Opposition itself concedes that American has yet to disclose an expert and, therefore, the location of such individual is entirely speculative. *See Cap. Funding Hotel Grp., Ltd. v. Regis Assocs.*, 1992 WL 296376, at *6 (N.D. Ill. Oct. 14, 1992) (refusing to consider speculative assertions regarding witnesses' future testimony).[2]

Finally, Plaintiff's only attempt to show a transfer would inconvenience him is to simply declare it "would impose a significant burden." Opp. at 12. But he offers no explanation as to *why*, except that he is "a retiree on a fixed income" and seeks an annual pension increase of $1,140 per year (i.e., just $95 per month). *Id.* Not only does this sidestep American's arguments, Mot. at 10,

---

[2] Plaintiff also argues that the "failure to formalize" American's "preference" for litigating in Texas by adding a forum-selection clause in the Plans somehow "undercuts" its current transfer request. Opp. at 12-13. But there is simply no authority whatsoever for the suggestion that a party must include a forum-selection clause before prevailing on an otherwise-supported motion for transfer under 28 U.S.C. § 1404(a).

but his other arguments again undermine his purported prejudice. That is, he argues cases like this are really a "battle of experts" and "rarely make it to trial." *Id.* at 10, 13. As such, there is no basis for finding Plaintiff needs to travel to Texas, at least before a trial—a speculative prejudice outweighed by *actual* inconvenience to American in litigating the rest of the case.

### C. The Public-Interest Factors Also Support a Transfer to Texas.

Plaintiff's Opposition cannot avoid that the public-interest factors favor a transfer as well.

*Docket Congestion.* While Plaintiff argues that congestion of the Court's docket deserves little weight, he concedes that resolution is slower in the Northern District of Illinois than in the Northern District of Texas. Opp. at 13. He attempts to spin this by suggesting that because Plaintiff filed this action four months ago and the parties have briefed Defendants' motion to dismiss, "time *will be lost* if the case is transferred." *Id.* at 14. This is unsupported by any evidence or caselaw and speculates that the Northern District of Texas would require all new briefing. He also tries to undermine the importance of the speed of resolution by asserting that "a trial is very unlikely" in this matter. *Id.* But the Seventh Circuit has directed that "[t]o the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved." *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 710 (7th Cir. 2020) (citation omitted). Moreover, Plaintiff admits that the weighted filings per judge in the two forums, along with the percentage of pending civil cases that are more than three years old, all favor transfer to Texas. Opp. at 13-14.

*Local Interest.* Plaintiff's response regarding this factor largely repeats his incorrect assertion that the "material events" underpinning this case occurred in Illinois. Opp. at 15. From this, he contends that nearly 3,000 potential class members may live in Illinois, so this District has a strong interest in resolving a case where "a citizen is harmed in Illinois by an employer found in Illinois." *Id.* But the Northern District of Texas has a far greater interest, where *many more* Texas citizens were supposedly harmed in Texas by an employer headquartered in Texas. Plaintiff also

10

skirts the fact that 26% (i.e., more than *25,000*) current participants in the Plans live in Texas. And there also is a local interest in adjudicating a case nearby a defendant's headquarters. *See Warwick v. Schneider Nat'l, Inc.*, 2020 WL 5891407, at *7 (N.D. Ill. Oct. 5, 2020). This factor also favors transfer.

## III.   CONCLUSION

For these reasons and the reasons set forth in its opening brief, Defendants respectfully request that this Court transfer this action to the Northern District of Texas.

DATED: March 3, 2025                    Respectfully submitted,

*/s/ Matthew A. Russell*
Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL  60606
312-324-1000
312-324-1001 (fax)
matthew.russell@morganlewis.com

Jeremy P. Blumenfeld (lead)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
215-963-5258
215-963-5001 (fax)
jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants American Airlines, Inc., and the Employee Benefits Committee*

11