**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS PARISI on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-09271 |
| AMERICAN AIRLINES, INC., THE EMPLOYEE BENEFITS COMMITTEE and JOHN/JANE DOES 1-5, | Hon. Judge Sunil R. Harjani |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................... 1

II.    ARGUMENT .............................................................................................................. 2

    A.    29 U.S.C. § 1055 Does Not Displace a Plan's Express Actuarial Assumptions with a Vague And Judicially Determined "Reasonableness" Provision. ............................................................................. 2

    B.    Plaintiff's Arguments That "Actuarial Equivalence" Requires "Reasonable" Assumptions Fail as a Matter of Law. ........................... 5

        1.    The Court May Not Rewrite § 1055 to Advance Erisa's "Purpose." ........ 5

        2.    "Actuarial" Assumptions Does Not Definitionally Mean "Reasonable" Assumptions ............................................................ 7

        3.    Interpreting § 1055 as Omitting a "Reasonableness" Requirement Does Not Render the Provision "Meaningless." .................................... 10

    C.    Treasury Regulations and ASOPs Do Not Save Plaintiff's Claims .................... 12

    D.    Plaintiff's Claims Also Fail Because He Does Not Allege His "Accrued Benefit." ................................................................................. 13

    E.    Plaintiff Fails to State a Claim for Fiduciary Breach ........................................... 14

III.    CONCLUSION .......................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Belknap v. Partners Healthcare Sys.*,
  588 F. Supp. 3d 161 (D. Mass 2022) ............................................................... *passim*

*Bonte v. U.S. Bank, N.A.*,
  624 F.3d 461 (7th Cir. 2010) ...................................................................15

*Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*,
  840 F.3d 448 (7th Cir. 2016) ......................................................................6

*Cent. States, Se. & Sw. Areas Pension Fund v. Rodriguez*,
  2021 WL 131419 (N.D. Ill. Jan. 14, 2021) .............................................................6

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995) ..............................................................................7

*Dooley v. American Airlines, Inc.*,
  1993 WL 460849 (N.D. Ill. Nov. 4, 1993) ...............................................................9

*Drummond v. S. Co. Servs., Inc.*,
  2024 WL 4005945 (N.D. Ga. July 30, 2024) ..................................................1, 4, 9, 10

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) .............................................................................15

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ..............................................................................7

*Heimeshoff v. Hartford Life & AccidentInsurance Co.*,
  571 U.S. 99 (2013) ............................................................................3, 7

*Lamie v. U.S. Tr.*,
  540 U.S. 526 (2004) ..............................................................................3

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) .............................................................................12

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993) ............................................................................1, 6

*Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pen. Comm.*,
  2024 WL 5410419 (E.D. Mich. April 17, 2024) ..............................................1, 4, 10

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002) ............................................................................7

*Stephens v. U.S. Airways Group, Inc.*,
   644 F.3d 437 (D.C. Cir. 2011) ..................................................8, 9, 11, 12

*United States v. Jicarilla Apache Nation*,
   564 U.S. 162 (2011) ............................................................................8

*Urlaub v. CITGO Petroleum Corp.*,
   2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ....................................10, 14

*US Airways, Inc. v. McCutcheon*,
   569 U.S. 88 (2013) ............................................................................7

*Watt v. FedEx Corp.*,
   No. 2:23-cv-02593 (W.D. Tenn. Sept. 18, 2024) ..............................1, 4

*West v. AK Steel Corp.*,
   484 F.3d 395 (6th Cir. 2007) ............................................................13, 14

**Statutes**

26 U.S.C. § 401(a)(25) ..........................................................................3, 9, 10

29 U.S.C. § 1002(23) ............................................................................13

29 U.S.C. § 1055(a) ..............................................................................2, 5, 13, 14

29 U.S.C. § 1055(d) .............................................................................. *passim*

29 U.S.C. § 1055(g) .............................................................................. *passim*

29 U.S.C. § 1083 ..................................................................................4, 8, 13

29 U.S.C. § 1102 ..................................................................................7, 10

29 U.S.C. § 1104(a)(1) ..........................................................................7, 15

29 U.S.C. § 1393 ..................................................................................4, 8

29 U.S.C. § 1432 ..................................................................................4

**Regulations**

26 C.F.R. § 1.401(a)(4)-12 ......................................................................12

26 C.F.R. § 1.401(a)-20, Q&A-16 ............................................................14

26 C.F.R. § 1.417(a)(3)-1.................................................................................................3

## I.     INTRODUCTION[1]

Plaintiff claims ERISA required Defendants to disregard the Plans' written terms in favor of terms he finds more "reasonable." Plaintiff's sole statutory support is 29 U.S.C. § 1055(d), which he says mandates that a pension plan use "reasonable" actuarial assumptions to convert an accrued benefit single-life annuity ("SLA") to a joint-and-survivor annuity ("JSA"). The problem is that § 1055(d) does not require any specific assumptions, let alone "reasonable" ones, nor does it displace a plan's written terms. When Congress wants to require pension plans to use certain assumptions, it says so. Indeed, Congress explicitly *does* require "reasonable" assumptions in other ERISA provisions—but chose not to do so in § 1055(d). That is why other courts have dismissed nearly identical claims: § 1055(d) does not impose the requirement Plaintiff seeks to enforce.[2]

Plaintiff's answer is to ask this Court to insert such a requirement into ERISA. The Court should not do so, and Plaintiff's Opposition (Dkt. 28, "Opp.") offers no genuine support for this request. First, Plaintiff invokes ERISA's general purpose, which he believes should make a JSA comparatively more valuable in relation to an SLA. Opp. at 3-4. But "vague notions of a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the specific issue under consideration." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261-62 (1993). That is especially true here, as ERISA *does* mandate using "reasonable" assumptions for *specific* purposes, but not calculating JSAs. Regardless, Plaintiff oversimplifies ERISA's "purpose," which does not require courts to increase benefits via statutory revisions better left to Congress.

---

[1] Terms defined in Defendants' Motion and supporting brief (Dkt. 19) have the same meaning herein.

[2] *See Belknap v. Partners Healthcare Sys.*, 588 F. Supp. 3d 161, 175 (D. Mass 2022); *see also Drummond v. S. Co. Servs., Inc.*, 2024 WL 4005945, at *5 (N.D. Ga. July 30, 2024), *appeal filed*, 24-12773 (11th Cir. Aug. 28, 2024); *Reichert v. Bakery, Confectionary, Tobacco Workers & Grain Millers Pen. Comm.,* 2024 WL 5410419 (E.D. Mich. April 17, 2024), *appeal filed*, No. 24-1442 (6th Cir. May 15, 2024); Ex. 1, *Watt v. FedEx Corp.*, No. 2:23-cv-02593, Dkt. No. 66 ("Watt Order") (W.D. Tenn. Sept. 18, 2024), *appeal filed*, No. 24-5945 (6th Cir. Oct. 11, 2024).

Second, Plaintiff argues that "actuarial equivalence" is a "term of art" that "bakes in" a reasonableness requirement. Opp. at 5-8. There is no support for this manufactured definition. Plaintiff's cited authority makes no mention of any "reasonableness" requirement in § 1055(d) and says nothing about the specific actuarial assumptions a plan must use to calculate JSAs. Plaintiff's argument that "actuarial equivalence," by definition, *always* mandates "reasonable" assumptions also ignores the fact that Congress explicitly chose to require "reasonable" assumptions for specific purposes in ERISA, but not others.

Third, Plaintiff argues that any statutory construction but his own would render § 1055(d) meaningless. But, as explained below, Plaintiff's *own* authority assigns meaning to § 1055(d), with *no* reference to the "reasonableness" requirement he asks the Court to engraft onto the statute.

Finally, Plaintiff's claim under § 1055(d) also fails because the Complaint compares his current JSA benefit to the wrong baseline. Section 1055(a) requires calculating a JSA benefit based on a participant's "accrued benefit," which ERISA expressly defines as the amount at "normal retirement age." Plaintiff, however, retired *before* normal retirement age and does not allege he is receiving less than the "actuarial equivalent" of his "accrued benefit." Count I therefore fails for this reason as well.

## II. ARGUMENT

### A. 29 U.S.C. § 1055 Does Not Displace a Plan's Express Actuarial Assumptions with a Vague and Judicially Determined "Reasonableness" Provision.

Plaintiff asks the Court to cast aside the Plans' express terms and use assumptions he believes are more "reasonable." But § 1055(d) says nothing about the assumptions a plan must use to calculate JSAs—let alone mandate assumptions that contradict those set forth in the plan.

The statute itself is dispositive. The text of § 1055(d) never uses the word "reasonable." It does not address actuarial assumptions at all. It merely defines "qualified joint and survivor

annuity" and "qualified optional survivor annuity" in ways that require that they be "the actuarial equivalent of a single annuity for the life of the participant." 29 U.S.C. § 1055(d)(1)(B), (2)(A)(ii). Courts may not "read an absent word into the statute" in the guise of "filling a gap left by Congress' silence," because to do so would "rewrit[e] rules that Congress has affirmatively and specifically enacted." *Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (citation omitted). Thus, courts have held that § 1055, "[o]n its face," "contains no reasonableness requirement" and "says nothing about how actuarial equivalence is to be calculated[.]" *Belknap*, 588 F. Supp. 3d at 170.

Instead, Congress requires that pension plans *must* specify the actuarial assumptions for calculating certain benefits directly in the written plan document, so their amounts are "definitely determinable" and to preclude employer discretion in benefit calculations. 26 U.S.C. § 401(a)(25). After all, the written plan is "at the center of ERISA," *Heimeshoff v. Hartford Life & AccidentInsurance Co.*, 571 U.S. 99, 108 (2013) (citation omitted), and Congress intended every participant, plan administrator, and court to be able to determine a benefit *to the penny* by looking at the written plan terms. Requiring that actuarial assumptions be "reasonable" is fundamentally inconsistent with the notion that benefits must be "definitely determinable" under a plan. Moreover, disclosure regulations require plans to disclose to participants when different benefit forms—like SLAs and JSAs—have *different* values. *See* 26 C.F.R. § 1.417(a)(3)-1; Mot. at 10-11. Such a disclosure would be meaningless and unnecessary if all benefit forms already must have the same value using "reasonable" assumptions.

Adhering to the actual text of § 1055(d) is particularly important because adopting Plaintiff's approach would render other statutory provisions meaningless. In contrast to § 1055(d), other ERISA provisions explicitly require using specific "reasonable" actuarial assumptions for certain purposes. In 29 U.S.C. § 1055(g), for example, Congress requires the use of specific

assumptions to calculate lump-sum payments.[3]  But Congress has *not* amended §1055(d)—the provision at issue in this case—to add similar requirements for JSAs. In 29 U.S.C. § 1393(a)(1), Congress requires that withdrawal liability be calculated using "actuarial assumptions and methods which, in the aggregate, are reasonable." That provision, however, does not apply to § 1055. Similarly, 29 U.S.C. § 1083(h) provides that, for plan funding purposes, plans must use "actuarial assumptions and methods … *each of which is reasonable*." (emphasis added). Again, that section does not apply to § 1055. And, most recently, Congress amended ERISA in 2021 to provide that eligibility for the Special Financial Assistance program is based on the plan's actuarial assumptions "unless such assumptions (excluding the plan's interest rate) are unreasonable." 29 U.S.C. § 1432(e)(1); *see id.* § 1432(e)(2) (similar, re: the amount of Special Financial Assistance).

But Congress did not do any of those things in § 1055(d). That is, Congress did not require that actuarial assumptions be reasonable "in the aggregate," or that "each" actuarial assumption be reasonable, or that "all" assumptions be reasonable, as it did in these other ERISA provisions. Those provisions confirm that Congress knows exactly how to include similar language in § 1055(d) if that is what Congress intends. And the omission of the word "reasonable" from § 1055(d) is meaningful precisely because "[o]ther sections of ERISA do require the use of certain assumptions and/or reasonableness criteria." *Watt* Order at 6 (emphasis added); *Drummond*, 2024 WL 4005945, at *5 (similar); *Reichert*, 2024 WL 5410419, at *2 (similar); *Belknap*, 588 F. Supp. 3d at 171 (similar).  "If Congress intended to include a reasonableness requirement in § 1055," as it did elsewhere, "it would have done so."  *Reichert*, 2024 WL 5410419, at *2.  Therefore, there is no basis for inferring such a requirement in § 1055.

---

[3] Congress has since amended § 1055(g) several times (in 1986, 1994, 2006, 2008, 2012, and 2014), including to modify the actuarial assumptions required when calculating lump sum amounts.

**B.    Plaintiff's Arguments That "Actuarial Equivalence" Requires "Reasonable" Assumptions Fail as a Matter of Law.**

Plaintiff's Opposition does not address these straightforward arguments. In the face of ERISA's plain language, he argues § 1055 nevertheless implies an extratextual "reasonableness" requirement, no matter how this might conflict with other statutory provisions. Each argument fails as a matter of law.

**1.    The Court May Not Rewrite § 1055 to Advance ERISA's "Purpose."**

Because Plaintiff's position finds no support in ERISA's actual language, he falls back on appeals to the statute's purpose. He contends his lawsuit seeks "enforcement of ERISA's protections for surviving spouses under § 1055," a goal "consistent" with ERISA. Opp. at 3-4. He then urges the Court to impose an unwritten "reasonableness" requirement onto § 1055(d) to advance ERISA's "paternalistic regulation" of pension plan annuity benefits. *Id.* at 4.

To start, Congress's concern for "protecting" surviving spouses is manifested in the express statutory provisions that ensure the default form of benefit to a married participant is a JSA, a benefit form that continues to pay a pension to a surviving spouse. 29 U.S.C. § 1055(a). That is true regardless of the assumptions used to calculate the benefit. But ERISA's statutory provisions confirm that Congress was not just concerned with protecting surviving spouses above all else. After all, Congress could have *required* all spousal benefits to be a 100% JSA if it just wanted to protect surviving spouses. But it did not. Instead, Congress allows plans (like the Plans here) to set the default form of payment, the QJSA, as a 50% JSA that gives the surviving spouse half the participant's pension. Congress also could have prohibited married participants from electing benefit forms without a survivor annuity. But it did not. Instead, Congress allowed participants and spouses to elect another form of benefit—like a lump sum or single life annuity—that provides no spousal protection at all. As a policy matter, there are good reasons for these choices, but

regardless of the reasons, what matters is that these are the choices Congress made.

This is no different. Congress could have imposed a reasonable requirement in § 1055(d), or required plans to use specific "reasonable and current" assumptions like it did for lump sums. But Congress chose not to, and that choice reflects the balancing of competing goals and purposes. In effect, Plaintiff asks this Court to rewrite *both* the statute *and* the Plan terms, to advance one amorphous "general purpose." But courts cannot override statutory text on that basis:

> [V]ague notions of a statute's 'basic purpose' are [] inadequate to overcome the words of its text regarding the specific issue under consideration. This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs.

*Mertens*, 508 U.S. at 261-62 (citations and internal quotations omitted). The Seventh Circuit has followed this reasoning and "consistently rejected" the argument that ERISA's terms should be expanded or rewritten simply because doing so would be "consistent with ERISA's underlying purposes of protecting plan assets and enforcing plan terms." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 454 (7th Cir. 2016) (internal quotations omitted). In short, "[t]he purpose of a statute" such as ERISA "does not allow a court to change the words in a statute." *Cent. States, Se. & Sw. Areas Pension Fund v. Rodriguez*, 2021 WL 131419, at *5 (N.D. Ill. Jan. 14, 2021). This Court should decline to do so here.

By asking the Court to rewrite § 1055(d) to advance ERISA's supposed *general* purpose, Plaintiff ignores that Congress chose to apply a "reasonableness" requirement only for *specific* purposes. As noted, Congress deliberately required plans to use "reasonable" actuarial assumptions to calculate withdrawal liability, plan funding, and certain eligibility determinations. *Supra* at 3-4. That is, Congress requires "reasonable" assumptions for certain specific purposes—but *not* calculating JSAs. To impose such a requirement on a statutory provision like § 1055, where it does not exist, would contravene the Supreme Court's directive that it is not the court's "job to find

reasons for what Congress has plainly done; and it *is* our job to avoid rendering what Congress has plainly done . . . devoid of reason and effect." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217-18 (2002)).

In any event, Plaintiff's account of ERISA's purpose is incomplete and self-serving. The "principal function" of ERISA is to "protect contractually defined benefits." *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (citation omitted). Under the statute, employee benefit plans must be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), by fiduciaries who discharge their duties "in accordance with the documents and instruments governing the plan," *id.* § 1104(a)(1)(D). In this way, ERISA's scheme of rights and obligations "is built around reliance on the face of written plan documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). And those written plan documents are, in turn, "at the center of ERISA." *Heimeshoff*, 571 U.S. at 108. In short, Plaintiff's interpretation of § 1055 would undermine one of ERISA's fundamental aims: "inducing employers to offer benefits by assuring a *predictable* set of liabilities, under uniform standards of primary conduct." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002) (emphasis added).

## 2. "Actuarial" Assumptions Does Not Definitionally Mean "Reasonable" Assumptions.

Next, Plaintiff argues that "actuarial equivalence" is a "term of art" that implicitly requires using Plaintiff's preferred actuarial assumptions. Opp. at 5. He proposes that this meaning—which he defines only vaguely—must override the plain text of § 1055(d). But none of the Opposition's sources—or any other sources, for that matter—support interpreting "actuarial equivalent" as requiring the use of actuarial assumptions that contradict those set forth in the written Plan terms.

To start, Plaintiff's argument has no support in the statutory language. As explained, Congress imposed a "reasonableness" requirement in several places in ERISA, but not in § 1055.

Arguing that "actuarial" assumptions always need to be "reasonable" assumptions would render the *specific* "reasonableness" language in 29 U.S.C. § 1083(h) and § 1393(a) superfluous (*see supra* at 3-4, 6). That is, if "actuarial" assumptions always need to be "reasonable" by definition, as Plaintiff argues, there would be no reason to include the explicit requirements in 29 U.S.C. §1055(g), § 1083(h), and § 1393(a). *See, e. g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 185 (2011) ("'[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law'") (internal citation omitted). That Congress required "reasonable" actuarial assumptions in other provisions, but not in § 1055(d), compels the conclusion that Congress did not intend the term "actuarial" equivalence to carry the implied "reasonableness" requirement Plaintiff claims.[4]

Even Plaintiff's own cited authority does not support his argument. He relies on an article by the Society of Actuaries entitled "Actuarially Equivalent Benefits." Opp. at 6. But that article is not part of ERISA's statutory text and does not control § 1055. Worse, it does not even suggest "actuarially equivalent" annuity benefits require using "reasonable" assumptions, as Plaintiff asserts. At best, the article recommends that "[p]eriodically, the assumptions used [for actuarial equivalence] must be reviewed and modified so as to insure they continue to fairly assess the cost of the optional basis of payment." *Id.* (alteration in original). This hardly supports Plaintiff's claim that "actuarial equivalence" always requires "reasonable" assumptions.

Plaintiff also relies heavily on *Stephens v. U.S. Airways Group, Inc.*, 644 F.3d 437 (D.C. Cir. 2011), Opp. at 5, 6, 12, but the "established meaning" of "actuarial equivalence" identified by

---

[4] Plaintiff's argument also would require this Court to decide whether Congress intended § 1055 to necessitate actuarial assumptions that are reasonable "in the aggregate" (like Congress *explicitly* requires in § 1393 and used to require in § 1083, before amending that provision), or actuarial assumptions that are *each* individually "reasonable" (like Congress *explicitly* requires in § 1083). In those provisions, Congress expressly stated whether assumptions must be reasonable together or alone. But it did not articulate either approach in § 1055, confirming Plaintiff's interpretation cannot be squared with the statutory text as written.

the D.C. Circuit bears no resemblance to the meaning Plaintiff ascribes to it here. According to the court, "[t]wo modes of payment are actuarially equivalent when their present values are equal *under a given set* of actuarial assumptions." *Id.* at 440 (emphasis added). This definition requires the use of a "given set of" assumptions, but does not specify *which* actuarial assumptions must be used. Indeed, for § 1055(d), the "given set" of assumptions to which *Stephens* refers is properly understood as the set of assumptions that, by law, a defined benefit plan must specify in its written terms. *See* 26 U.S.C. § 401(a)(25). *See Drummond*, 2024 WL 4005945, at *6 (nothing in *Stephen*'s definition "expressly requires that the set of actuarial assumptions be reasonable."). Despite claiming "actuarial" assumptions are always understood to require "reasonable" assumptions, Plaintiff points to no authority to support his theory.

If Congress intended for "actuarial" to have a baked-in "reasonableness" requirement any time it appears in ERISA, it could have defined it in that way. But Congress did not do that. Congress also could have included a provision in ERISA that specifically required *all* actuarial assumptions to be "reasonable" for *all* purposes, or a similar "reasonableness" provision every time it used the term "actuarial equivalence." But it did not do those things either. Instead, Congress limited the "reasonableness" requirement to *specific provisions* where Congress believed this is appropriate. Plaintiff's argument that a "reasonableness" requirement should be grafted onto § 1055 is contrary to fundamental rules of statutory construction.

Plaintiff's other authority is no help. In *Dooley v. American Airlines, Inc.*, 1993 WL 460849 (N.D. Ill. Nov. 4, 1993), the court held that actuarial equivalence must be "determined on the basis of actuarial assumptions with respect to mortality and interest which are reasonable in the aggregate." *Id.* at *10. But it did so in the context of *lump-sum distributions*, for which ERISA does explicitly require the use of "reasonable" actuarial inputs. It does not do so for annuities.

9

*Supra* 3-4, 6. As discussed, this Court may not freely extend the reasonableness requirement of one section of ERISA to another section; to the contrary, it must be assumed that Congress intended the statute to mean what it says. Plaintiff also relies on Judge Kennelly's decision in *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129, at *6 (N.D. Ill. Feb. 22, 2022), holding that "[o]nly accurate and reasonable actuarial assumptions can convert benefits from one form to another in a way that results in equal value between the two." But that case is an outlier. The court's source for its statutory interpretation was the definition of "equivalent" in a Merriam-Webster dictionary. *Id.* Courts that have addressed the same question in more detail have rejected *Urlaub's* holding as "unpersuasive." *Belknap*, 588 F. Supp. 3d at 174; *see also Drummond*, 2024 WL 4005945, at *4-6 (declining to follow *Urlaub*); *Reichert*, 2024 WL 5410419, at *2 (similar).

### 3. Interpreting § 1055 as Omitting a "Reasonableness" Requirement Does Not Render the Provision "Meaningless."

Finally, Plaintiff argues § 1055 *must* impose an unwritten "reasonableness" requirement, or the provision would be meaningless. *See* Opp. at 8-9. This argument fails for several reasons.

To start, Plaintiff misstates Defendants' position. Defendants do not contend, as Plaintiff suggests, that § 1055(d) is satisfied simply by stating the terms of a plan's annuity benefits, as required by 29 U.S.C. § 1102(b)(4). Rather, Defendants argue that inserting a "reasonableness" requirement into § 1055(d) is *inconsistent* with § 1102(b)(4). Congress required pension plans to be maintained pursuant to a written plan document that includes the "bases on which payments are made to and from the plan." 29 U.S.C. § 1102(a)(1) & (b)(4). Congress also required that plans specify the actuarial assumptions used to calculate benefits. 26 U.S.C. § 401(a)(25). There would be no point in requiring disclosure of actuarial assumptions if the terms of a plan could be overridden by vague notions of "reasonableness" that Congress did not impose in the statute. Rather, the purpose of requiring assumptions to be stated in the plan is to allow participants to

10

evaluate those assumptions—and every other aspect of their plan—to decide if they want to work for one employer or another, and decide if they want to elect one benefit form or another.

Plaintiff's own authority undermines his argument. In *Stephens,* the court attributed meaning to "actuarial equivalence" without invoking any vague notions of "reasonableness." The court noted the "established meaning" of "actuarial equivalence" requires that "[t]wo modes of payment are actuarially equivalent when their present values are equal under a given set of actuarial assumptions." 644 F.3d at 440. This undermines Plaintiff's definition of "actuarial equivalent." It reflects that actuarial equivalence requires adherence to *some* set of assumptions. It does *not* suggest that a plan must use a specific set of assumptions that qualify as "reasonable."

In the end, Plaintiff stakes much of his case on a slippery-slope policy argument. He argues that if § 1055(d) does not mandate the use of "reasonable" or "current" actuarial assumptions, an employer could choose a mortality table from the 16th Century. Opp. at 8. But in ERISA's fifty-plus years of existence, no employer has ever done something so absurd. What employers have done, however, is establish benefit plans to make retirement options attractive to their workforce, as part of the overall pay and benefits the employer offers as compensation. And here, moreover, that give-and-take was the product of collective bargaining negotiations between American Airlines and unions representing its employees. Mot. at 3-4. As other courts have observed, even though ERISA does not mandate "a reasonableness standard" for calculating JSAs, that "does not mean that plan sponsors have unfettered discretion in calculating plan benefits; the assumptions used to determine actuarially equivalent benefits must be expressly stated in the plan documents." *Belknap*, 588 F. Supp. 3d at 175-76. Here, the assumptions used to calculate Plaintiff's JSA "were (and are) set forth in the Plan, not hidden somehow from the participants." *Id*. That would not be true if the actuarial assumptions in the plan documents could be overridden after the fact by vague

notions of "reasonableness" that Congress did not impose in the statute.

### C. Treasury Regulations and ASOPs Do Not Save Plaintiff's Claims.

Plaintiff also contends that certain Treasury regulations and Actuarial Standards of Practice ("ASOPs") "bolster" his claim under § 1055. Opp. at 12-13. He is wrong on both counts.

First, the Treasury regulations cited in the Complaint do not support Plaintiff's claim. As other courts have explained, "[t]here are no Treasury Department regulations that define 'actuarial equivalence,' at least in the context of annuity benefits." *Belknap*, 588 F. Supp. 3d at 175. Indeed, the regulations Plaintiff cites were promulgated under entirely different sections of ERISA and say nothing about calculating JSA benefits. Much like the *Stephens* court's description, the regulations merely reflect that "actuarial equivalence" requires adhering *some* set of common assumptions.[5] And even if Treasury regulations were relevant to § 1055 (they are not), they offer no "guidance" regarding what ERISA's actual language requires. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Nothing in ERISA purports to give an administrative agency the authority to define "actuarial equivalent," and now, after *Loper Bright*, it is up to the Court to give its "single, best" interpretation of the statute without deferring to agency interpretations. 603 U.S. at 400.

Second, the ASOPs do not mention § 1055, much less purport to interpret it. The Actuarial Standards Board did not even exist when ERISA was enacted; it was created in 1988 by the American Academy of Actuaries. So, the Board and the ASOPs have no bearing on what Congress intended when it adopted § 1055 in 1974. Regardless, the cited ASOPs do not relate to calculating benefits under § 1055. Instead, ASOP No. 27 (which incorporates some principles of former ASOP

---

[5] For example, 26 C.F.R. § 1.401(a)(4)-12 says: "An amount or benefit is the actuarial equivalent of, or is actuarially equivalent to, another amount or benefit at a given time if the actuarial present value of the two amounts or benefits (calculated *using the same actuarial assumptions*) at that time is the same." *Id.* (emphasis added). The regulation imposes no "reasonableness" requirement at all.

No. 35) addresses the selection of demographic assumptions "*for measuring pension obligations*." That refers to estimates of plan funding—which Congress explicitly assigned to actuaries and for which reasonable assumptions are *explicitly required* in § 1083(h).[6] In short, these ASOPs are irrelevant to interpreting § 1055, and only highlight the different word choices Congress used in different provisions when it wanted to require reasonable actuarial assumptions.

### D. Plaintiff's Claims Also Fail Because He Does Not Allege His "Accrued Benefit."

Plaintiff's claim under § 1055 fails for another independent reason. It is a bedrock principle under ERISA that a defined benefit plan participant's "accrued benefit" is "expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23). As relevant here, § 1055(a)(1) requires a participant's "accrued benefit" be available in the form of a QJSA. The starting point for determining the value of a QJSA, therefore, is the "accrued benefit"—i.e., the SLA to which the participant is (or was) entitled at *normal retirement age*. But Plaintiff alleges nothing about his accrued benefit, nor does he compare his current JSA to his accrued benefit. The Complaint therefore does not allege that Plaintiff is now receiving *less* than the "actuarial equivalent" of his normal-retirement-age "accrued benefit."

This pleading failure is particularly notable considering the statutory requirements for paying lump sums. *See* 29 U.S.C. § 1055(g). ERISA provides that a lump sum distribution must be the actuarial equivalent of the "accrued benefit," meaning payable at *normal retirement age*. *See, e.g.*, *West v. AK Steel Corp.*, 484 F.3d 395, 407-08 (6th Cir. 2007) ("a vested participant in a defined benefit plan must receive a benefit that is the actuarial equivalent of her normal retirement

---

[6] *See* Actuarial Standards Board, ASOP No. 27, § 1.2, Scope ("*Measurements of pension obligations do not generally include individual benefit calculations, individual benefit statement estimates,* or nondiscrimination testing.") (emphasis added), https://www.actuarialstandardsboard.org/asops/adopted-asop-no-27-selection-of-assumptions-for-measuring-pension-obligations/

benefit (that is, the *accrued benefit* expressed as an annuity *beginning at normal retirement age*)") (emphasis added). As the *West* court explained, ERISA requires that "[a]ny distribution in optional form (such as a lump sum) must be no less than the actuarial equivalent of the normal retirement benefit." *Id.* at 409 (citation omitted). Plaintiff cannot get around this point. As he acknowledges, Congress explicitly requires using *specific* actuarial assumptions for calculating lump sums under § 1055(g). Opp. at 9. And when it did so, Congress mandated that the "accrued benefit"—i.e., the amount payable at *normal retirement age*—be converted to a single lump sum using those specified assumptions. Plaintiff's Complaint disregards the statute's "accrued benefit" requirement in § 1055(a) and alleges nothing to plausibly suggest his current JSA is *not* the actuarial equivalent of his "accrued benefit," even using "reasonable" assumptions.

Plaintiff relies on *Urlaub v. CITGO Petroleum Corp.*, which reads 26 C.F.R. § 1.401(a)-20, Q&A-16, to mean "the proper point of comparison is between the JSA at the participant's actual retirement date and an SLA at that date." Opp. at 10-11. But *Urlaub* and that regulation have it wrong. Both insert language into §§ 1055(a) and (d) that simply does not exist in the statute itself—namely, the requirement that a "QJSA must be at least as valuable as any other optional form of benefit payable under the plan *at the same time*." (emphasis added). Section 1055(d) says no such thing. Section 1055(a), by contrast, expressly requires providing the "accrued benefit" as a QJSA. Plaintiff cites no other court to interpret this regulation as the court did in *Urlaub*.

In sum, Plaintiff does not allege he is receiving anything less than the actuarial equivalent of his "accrued benefit"—i.e., the amount of his SLA at normal retirement age. Therefore, he also does not allege any facts to state a claim for violation of 29 U.S.C. §§ 1055(a) and (d).

### E. Plaintiff Fails to State a Claim for Fiduciary Breach.

Plaintiff's fiduciary-duty claim fails for at least three reasons: (1) it is derivative of his § 1055 claim; (2) he ignores the crucial distinction between "fiduciary" and "settlor" conduct; and

(3) ERISA imposes no fiduciary duty to ignore the Plans' written terms. *See* Mot. at 13-15.

Plaintiff's Opposition simply ignored the first two points, thus conceding them. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Regardless, Plaintiff ultimately challenges the legality of the Plan's written terms—not any action undertaken by Defendants as a fiduciary—and so this claim fails.

Plaintiff's only response is that ERISA's "duty of prudence trumps the instructions of a plan document[.]" Opp. at 14 (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420 (2014)). But, *Dudenhoeffer* addressed a different issue, where an employee stock ownership plan squarely contradicted a competing duty of diversification codified expressly in ERISA, 29 U.S.C. § 1104(a)(1)(C). That is not true here, where the duty Plaintiff alleges—to use "reasonable" assumptions in calculating JSAs—is indisputably not stated in ERISA's text.

Moreover, accepting Plaintiff's theory would upend ERISA's reticulated framework and put fiduciaries in untenable positions. Not only would they have to continually assess if a plan's assumptions are "reasonable," but they would risk personal liability for not following the plan if they override it. 29 U.S.C. § 1104(a)(1)(D). Fiduciaries also would pay greater benefits than the plan itself allows, potentially upsetting participants concerned with the plan's financial stability. And they would attract attention from the Department of Labor and/or IRS, agencies charged with ensuring compliance with the governing plan documents. Because mortality and interest rates fluctuate, it would be hard for a fiduciary to assess Plaintiff's concept of "reasonableness." These concerns take on even greater weight here, where the Plan is subject to collective bargaining, and neither American Airlines nor Plan fiduciaries can amend it unilaterally. *See* Mot. at 3-4.

## III.    CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

DATED: March 3, 2025

Respectfully submitted,

/s/ Matthew A. Russell
Matthew A. Russell
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
312-324-1000
312-324-1001 (fax)
matthew.russell@morganlewis.com

Jeremy P. Blumenfeld (lead)
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103-3007
215-963-5258
215-963-5001 (fax)
jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants American Airlines, Inc., and the Employee Benefits Committee*

16